SEVIER TADLOCK AND OTHERS V. JAMES C. ECCLES.

Where the mortgagee being sued for a foreclosure, pleaded his homestead exemption, and there was a judgment of foreclosure, ordering the property to be sold, upon which the property was sold; in a suit by the purchaser to recover the property, it was held that the defendant, the mortgagee, was concluded, by the judgment of foreclosure, from again pleading his homestead exemption.

There is no better settled principle, than that the judgment or decree of a Court of competent jurisdiction, directly upon the point, or necessarily involving the decision of the question, is conclusive between the parties and their privies, upon the same matters coming directly in question in a collateral action, in the same or another Court of concurrent jurisdiction. There is nothing in the nature of the right of homestead, to exempt it from the operation of the general principle.

The precise question now before the Court was determined by this Court in the case of Lee v. Kingsberry, which, if there ever could have been a doubt as to the application of the general principle to such a case, must be held decisive of the question.

But it is insisted that there are other parties, the children of the defendant, who have intervened in this suit, and who are not concluded by the former judgment, because not parties to it. If the wife were here to assert her rights, she would not be concluded, because not a party to the proceeding, (of foreclosure of a mortgage on the homestead;) but the children cannot control the parents in the disposition of the homestead, or assert a right therein adversely

Tadlock v. Eccles.

to the act of their parents; whatever will bind the head of the family, will bind them.

Where the title of an Act of the Legislature was, "To consolidate the Texas Monumental Committee and the Texas Military Institute, with Rutersville College," it was held that it embraced but one object, within the meaning of the Constitution, and that it sufficiently expressed the object of the Act, which was to clothe the new corporation with all the rights, privileges and powers, which formerly appertained to the two, now consolidated into one.

The terms employed in the title of the Act, are sufficiently significant of the subject of its provisions; and that was what the Constitution intended, (by the requisition that the object of every Act of the Legislature should be expressed in its title.)

It could not have been intended that no Act of legislation should be constitutional, which had reference to the accomplishment of more than one ultimate end.

The intention doubtless was, to prevent embracing in one Act, having one ostensible object, provisions having no relevancy to that object, but really designed to effectuate other and wholly different objects, and thus to conceal and disguise the real object proposed by the provisions of an Act, under a false or deceptive title.

Appeal from Fayette.   Tried below before the Hon. James H. Bell.

On the 6th of April, 1852, Tadlock executed a mortgage on a tract of land including his homestead, to secure the payment of five notes of $100, each, of which notes and mortgage the Texas Monumental Committee became the owners ; and on the 9th of October, 1856, "The Texas Monument and Military Institute, a corporation created and established by an Act of the Legislature of said State, entitled 'An Act to consolidate The Texas Monumental Committee and The Texas Military Institute, with Rutersville College,' passed August 6th, 1856," sued said Tadlock for judgment on said notes, praying for foreclosure of said mortgage, and for an order of sale.   To said suit Tadlock pleaded that there was no such body corporate as the Texas Monument and Military Institute ; that the Act to consolidate the Texas Monumental Committee and the Texas Military Institute with Rutersville College, passed August 6th, 1856, was unconstitutional.

And for further plea, said defendant says that the said plaintiff ought not, &c., because he says that before the institution of said plaintiff's suit, to wit : on or about the 21st of May, 1855,

the said defendant filed his application for discharge in bankruptcy before the Hon. Chief Justice of the said county of Fayette, and on the 22d day of the said month of May, in pursuance of the provisions of the Act creating a system of bankruptcy in said State, passed 19th Jan'y, 1841, he proceeded to execute and tender to said Chief Justice a deed of conveyance and assignment to        as trustees for the use of said creditors in bankruptcy; that his said indebtedness to the Texas Monumental Committee was specified and embraced in his schedule or list, and on the hearing of his said application, the said Texas Monumental Committee appeared in Court, interposed their objections and resisted the grant of his said application ; that the said Chief Justice decided that said defendant was only entitled, for his homestead, to a reservation of 50 acres of land ; from which decision said defendant took an appeal to the District Court of said county, and the same remains still upon the docket undisposed of.    Wherefore said defendant says that said plaintiff is precluded from the prosecution of his said action, and prays that the same may be dismissed and that he may have all costs, &c.

Afterwards said Tadlock filed an amendment in said suit, as follows:—

And now comes the said Tadlock by leave of the Court, and for amendment submits a more particular description of his homestead reservation, mentioned in his deed of assignment, which has been surveyed by the county surveyor of said county, and described as follows : (Here followed the field-notes of 200 acres.)    And the said Tadlock claims and reserves the above described tract of land, with the mansion house and improvements thereon, as his homestead, being the same tract mentioned in said deed of assignment ; and he now prays that said description may be incorporated in said deed of assignment.

Judgment December 4th, 1856, for plaintiff for the amount claimed, and decree as follows:—

It appearing to the Court from the evidence submitted, that said defendant Tadlock executed and delivered to said plaintiff a mortgage to secure said sum of money, upon the following tract of land, to wit: (Here followed a description of the whole tract.)    It is thereupon considered, adjudged and decreed by the Court, that the said mortgage be foreclosed ; that said tract of land be sold by said Sheriff in like manner as sales are made

under execution, in satisfaction of said judgment; that the proceeds thereof be applied to the same, and if not sufficient to pay the principal, interest and costs, then that execution issue against the defendant for the residue.

On the 5th of January, 1857, order of sale issued accordingly, and on the 7th of April 1857, at a sale regularly held, under said order of sale, James C. Eccles became the purchaser of the whole tract, and received a deed therefor; leaving a balance in the Sheriff's hands, after paying the judgment, which defendant refused to receive.

On the 4th of May, 1857, Eccles brought this suit to recover the land. Defendant pleaded a general demurrer, general denial; and for further plea says that plaintiff ought not to have or maintain his action against him, because he says that on the 22d May, 1855, the said defendant filed his application for discharge in bankruptcy before the Chief Justice of the county of Fayette, and on the 22d day of said month, in pursuance of the provisions of an Act creating a system of bankruptcy in said State, passed 19th of Jan'y, 1841, he proceeded to execute and tender to said Chief Justice a deed of conveyance and assignment to          as trustees for the use of his creditors in bankruptcy, of all his property, embracing the land in controversy, with the reservation of his homestead of 200 acres out of said tract; that said Chief Justice refused the application of this defendant for discharge in bankruptcy, as aforesaid, from which decision an appeal was taken to the District Court of Fayette county, and the judgment of the Chief Justice aforesaid affirmed by said District Court, and the application refused; from which judgment the said defendant sued out a writ of error to the Supreme Court of the State, which writ of error is still pending in the said Supreme Court.

Three children of Tadlock, John, Sevier, Jr., and Melinda, intervened by next friend, as minors, alleging that they were the children of said Tadlock by a former wife, who had died in 18—; that on the        day of        185–, their father married again, but that some five years ago, their said stepmother, Marietta Tadlock, had abandoned their father and gone to parts unknown, and never returned; and they claimed the homestead privilege in 200 acres of said land.

Plaintiff amended by pleading the judgment in the foreclosure suit, and his purchase under said judgment.

At the trial plaintiff proved title to the land, in defendant,

50

acquired in July, 1849, and then gave in evidence the proceedings in the suit of foreclosure, and proved the sale to him under the decree in said suit; and closed. Defendant introduced A. Irwin, who testified that he had known the defendant 8 or 10 years; that he had, during all that time, resided on the land in suit, with his family, and made it his homestead, and had no other home; that he now has two children with him, named Melinda, and Sevier, Junior; that John had left his father, and was not living with him; that he did not know whether Melinda is of age or not, but Sevier, Jr., is only about 12 or 14 years old; that these two children now compose the whole family of defendant, and that the defendant is a very old and infirm man.

S. S. Munger for defendant testified that he was acquainted with the defendant and his children; that Melinda and Sevier, Jr., are now the only ones with him; that John has left him, and he judged John to be 22 or 23 years old; that he judged Melinda to be 20 or 21, and young Sevier to be 12 or 14; that the defendant has no other homestead, and has for 8 or 10 years made his home on this tract of land in suit, and that his last wife Marietta abandoned him 4 or 5 years ago, and has not returned, and his children were born by a former marriage.

N. W. Faison, for the defendant, testified that he had known said defendant 12 or 13 years; that he formerly lived in La Grange, and his first wife, the mother of the interveners, he thinks died there, and this was before he moved on the land, 12 or 13 years ago, but he is not positive as to this; that he never was at the house where defendant now lives but once, but he thinks he has resided where he does now 8 or 10 years and has no other homestead, and has no other in his knowledge.

The Court charged the jury, that there being no controversy about the facts, they should find for the plaintiff; objections to the manner of the charge being waived, upon an intimation by the Judge, of his opinion on the law of the case.

Verdict and judgment for the plaintiff; motion for new trial overruled &c.

The first Section of the Act of Incorporation of The Texas Monument and Military Institute read as follows:—

That the corporation known as "The Texas Monumental Committe," incorporated by an Act of said Legislature, entitled "An Act to incorporate the Texas Monumental Committee," approved January 19th, 1850, and the Texas Military Institute founded by Caleb G. Forshey, and the corporation known as "The Pre-

sident and Trustees of Rutersville College," incorporated by an Act of the Congress of the Republic of Texas, entitled, "An Act to establish and incorporate Rutersville College," approved February 5th, 1840, be and they are hereby consolidated into one corporation, under the name and style of "The Texas Monument and Military Institute," and under said name may have the right of succession, a common seal, and have and enjoy all the rights of property, and all the privileges, powers and immunities now granted by law to said corporations or either of them, with all other powers incident to a general corporation, in as full and ample a manner as the same might or should be exercised and enjoyed. And it is hereby expressly declared, that the object of this consolidation is to erect at the town of Rutersville, in the county of Fayette, a suitable mausoleum to those who have died or may die in the service of Texas, and the establishment of institutions of high learning for the youth of Texas, as a most suitable monument in honor of the dead.

The form of Tadlock's pleas in both suits will not fail to attract attention. The reporters found no others; nor was there any intimation of diminution of the record. It is presumed this Court gave appellant what appeared to be the most favorable construction of the record, for him. Doubtless the defendant would have been concluded, even if he had failed to plead the homestead exemption, in any form, in the suit for foreclosure.

*J. T. Harcourt*, for appellant. Does not the record show that there has been an infraction of Sec. 22, Art. 7, of the Constitution, by the forced sale of the homestead of the plaintiff in error? The homestead has been sold at Sheriff's sale. Under what pretext is it attempted to be justified? Upon the ground that the decree of foreclosure of the mortgage was conclusive of the subject matter involved in this suit. This we deny: first, because the decree is void upon its face, being violative of the Constitution, and may be collaterally impeached. (4 Bibb, 336; 6 How. Miss. R. 106; 5 Pike, 424.)

Secondly, because, if not void, it could only conclude those who were parties to the decree. "No other persons can be considered parties to a suit, so as to be bound by the judgment, but those who appear by the record to be such." (Allen v. Hall, 1 Marsh. Ky. R. 526; 2 B. Mon. R. 453; 7 How. Miss. R. 99.) The minors were equally entitled to the homestead exemption with the father. (North v. Shearn, 15 Tex. R. 174.)

To show that the act of the husband or head of the family, cannot defeat the benign policy of the homestead exemption, let us suppose that the husband is anxious to sell the homestead, but the wife will not join in the conveyance.

We believe we are safe in asserting that the decree of foreclosure and the sale under it were absolutely null and void. It was a "forced sale" as defined in Sampson v. Williamson, 6 Tex. R. 110.

This case was decided below upon the authority of the case of Lee v. Kingsbury, 13 Tex. R. 68, and according to my understanding of that case it is no authority for the decision in this case. In delivering the opinion in the case, Judge Wheeler remarks that, "The answer of the defendants sought to bring again in litigation in this suit, matters which had been finally adjudicated and determined in a former suit between the same parties." That the rule was properly enforced in that case we fully agree. But we respectfully insist that the facts of this case are very different.

The proof is here abundant that it was the homestead at the time of the sale. The question of homestead was not in issue in the former suit, even by Tadlock himself, as he felt secure under the protection of the Constitution, and was willing for all his land, except his reservation of 200 acres, to be used by his creditors. We respectfully submit that the law cited from 1 Greenl. § 534, is not applicable to our blended and liberal system of jurisprudence; but applies only to the arbitrary and technical systems where the different forms of action are preserved.

It is our boast that we can override the shackles of form, and arrive at the very justice of a cause. We say then, that it was our right to show in this suit, that it was our homestead because it was a point not litigated, and because of different parties who were not concluded.

In order that a former judgment may be pleaded in bar, it must appear upon the record, that the cause of action is the same as in the former suit. (4 Mass. 245.) A former judgment cannot be pleaded in bar unless it was directly upon the same point and between the same parties or persons. (6 Rand. R. 86; see also 5 Verm. 317; 4 Gill & Johns. 345; 1 Dev. & Bat. 486.)

There is another constitutional question presented by the record, which we consider fatal to the judgment of the Court below ; that is the constitutionality of the Act to consolidate the Texas Monumental Committee and the Texas Military Institute

with Rutersville College, passed August 6th, 1856; because it embraces more than one object.

The very style of the new corporation betrays the twofold object: The Texas Monument and Military Institute.

The leading object held up to excite the pride and patriotism of our countrymen is that of erecting some grand monumental pile, or mausoleum over the dead patriots of Texas. But when more critically examined, another object looms up as the paramount object for which this artificial personage was created; and that is, the establishment of a Military Institute.

But not satisfied with these two objects, the Act proceeds in the 6th Section to provide for a Female College, to wit: " The Rutersville Female College;" " That besides the Military Institute a Female College is hereby created, &c."

The Act of consolidation then, being unconstitutional, as we think we have shown, the judgment rendered in favor of the corporation was null and void, and hence all the proceedings under it were likewise null and void.

*W. G. Webb*, for appellee. The suit for foreclosure, and the judgment therein, are a clear bar to the defences set up to Eccles' suit. A judgment is conclusive even of all matters that might have been set up. (Weatherhead v. Mays, 4 Tex. R. 387; Id. 101; Crawford v. Simonton, 7 Port. R. 110; 1 Greenf. Sec. 528; Caston v. Perry, 1 Baily, R. 533; 16 Ala. R. 371; 18 Ala. 176; Id. 241; Id. 668; Hughes v. Blake, 1 Mason, 515; Hollister v. Barkley, 11 N. Hamp. 501; Star v. Star, 1 Ham. 321; Diehl v. Page, 2 Green. Ch. R. 143.) And it is equally as conclusive of all pre-existing defences, though a judgment by default. (Baron v. Abeel, 3 Johns. R. 481.)

In the first suit for foreclosure, the matter of the homestead was brought directly in issue by the pleadings, and of course Tadlock is concluded by it. He never in that suit took even a bill of exceptions, neither made nor asked any statement of facts, but allowed the judgment of foreclosure to be entered against him, decreeing a sale of all the land, including his homestead. We believe if he had in that suit contended for his homestead that under the proof now before the Court, he might have succeeded, but when he chose to abandon his claim, he certainly cannot complain, for it was his own act. He never attempted to appeal from the judgment of foreclosure, but acquiesced in the

same and stood by and allowed his land to be sold and said not a word, till the purchaser desired possession, when he forced him to bring this suit by refusing to leave the land.

Even if the law incorporating the Texas Monument and Military Institute, was unconstitutional, Tadlock precluded himself from setting it up here, because he waived it in the original suit. And if not constitutional, it would only have made the judgment voidable, and not void, and the rights of parties would be protected who purchased under it. The only way he could have tested the question was to have raised it in that suit, and if overruled to have excepted and then taken the case up. Eccles is no party to that suit, and cannot be affected by it. (McKean v. Ziller, 9 Tex. R. 58; Weatherhead v. Mays, 4 Id. 389; Yates v. Houston, 3 Id. 433; Curry v. York, 3 Id. 357.)

But the objection is frivolous. The object of the Act is to "consolidate" and no more, and the object of the consolidated corporation was and is to educate girls and boys at a Military Institute and a Female College "as" (in the last words of the 1st Section) "a most suitable monument in honor of the dead." This is the mausoleum spoken of in the first Section.

It is contended that the children of Tadlock have a right in the homestead. This is surely something new under the sun. If tenable, then a man could not sell his homestead without the consent of his children. There is no pretence that they claim as heirs of their mother, for the proof is that she died before Tadlock acquired title to the land.

The case of Lee and Wife v. Kingsbury, 8 Tex. R. 71, is conclusive of this case.

WHEELER, J. The right of the appellant, to his homestead exemption, was pleaded to the suit brought to foreclose the mortgage; and the judgment therein, condemning the land to be sold, was a direct adjudication adversely to the right of the defendant, upon the issue made by the plea. The merits of the judgment cannot be brought in question in a collateral action. Until reversed or annulled by some direct proceeding for that purpose, it is, and must be held, wherever brought collaterally in question, conclusive of the matters therein adjudicated. There is no better settled principle, than that the judgment or decree of a Court of competent jurisdiction, directly upon the point, or necessarily involving the decision of the question, is conclusive

between the parties, and their privies, upon the same matter coming directly in question in a collateral action, in the same or another Court of concurrent jurisdiction.  It can make no difference in the application of this principle, what may have been the subject matter of the judgment, provided it be one of which the Court rendering it had jurisdiction.  If the Court rendering the judgment had jurisdiction of the subject matter and the parties, its decision is conclusive until reversed on appeal or annulled by a proceeding for that purpose.  This is a principle too well and firmly established to be questioned or doubted.  Nor can it be doubted, that the District Court of Fayette county had jurisdiction to hear and determine the right of the appellant to the homestead, asserted by his plea.  If the decision was erroneous the defendant had his remedy by an appeal or writ of error to reverse the judgment.  But, until reversed, it must be held conclusively to have determined that question.  There is nothing in the nature of the right of homestead, to exempt it from the operation of the general principle.  There are other rights secured by the Constitution, which are equally sacred and inviolable.  The right of personal liberty, and the right of personal security, are not less so ; yet these, and every other right which is secured by the Constitution and laws, may be divested by the judgment of a Court of competent jurisdiction.

If the appellant had made the proof in the former case, which he has made in this, the Court must have adjudged the question in his favor, or its judgment must have been reversed, upon appeal, by this Court.  If he neglected or failed to make the proof, the Court could not do otherwise than render the judgment which was rendered in the case.  But whether he made the proof or not, or whether the Court decided erroneously or not in that case, cannot be inquired of in this.  The judgment in that case is conclusive of the question.  If it were otherwise, there would never be an end of litigation ; and questions solemnly adjudicated by a competent tribunal, would still remain, as before, open to re-examination.

The precise question now before the Court, was determined by this Court in the case of Lee v. Kingsbury, which, if there ever could have been a doubt as to the application of the general principle to such a case, must be held decisive of the question. (13 Tex. R. 68.)

But it is insisted that there are other parties, the children of the defendant, who have intervened in this suit, and who are not

concluded by the former judgment, because not parties to it. If the wife were here to assert her rights, she would not be concluded, because not a party to the proceeding, and because she cannot be divested of her right, except by her own voluntary act. But the children cannot control the parents in the disposition of the homestead, or assert a right therein adversely to the act of their parents. The parent has the right to dispose of the homestead without consulting them ; and whatever will bind the head of the family will be binding upon them. Their domicil follows that of the parent, and he has the power to choose, and renounce it for them at pleasure.

It is further insisted that the former judgment is void, because the Act creating the artificial person, plaintiff in that suit, was unconstitutional, and there really was no such person as the Texas Monument and Military Institute. The title of the Act by which the plaintiffs in the former suit were created a corporation, is the following : "An Act to consolidate the Texas Monumental Committee and the Texas Military Institute with Rutersville College." And it is objected that the Act embraces more than one object ; and is consequently repugnant to the 24th Section of the General Provisions of the State Constitution. This objection we do not think tenable. The object expressed in the title of the Act is to consolidate the two bodies into one ; and the natural inference would be, that the one corporation was to be clothed with the rights, privileges and powers which formerly appertained to the two, now consolidated in one. The terms employed in the title of the Act are sufficiently significant of the subject of its provisions; and that was what the clause in the Constitution intended. It could not have meant that the word "object" should be understood in the sense of "provision ;" for that would render the title of the Act as long as the Act itself. Various and numerous provisions may be necessary to accomplish the one general object, which an Act of the Legislature proposes. Nor could it have been intended that no Act of legislation should be constitutional which had reference to the accomplishment of more than one ultimate end. For an Act having one main or principal object in view, may incidentally effect or be promotive of others ; and it would be impossible so to legislate as to prevent this consequence. The intention doubtless was, to prevent embracing in an Act, having one ostensible object, provisions having no relevancy to that object, but really designed to effectuate other and wholly different objects, and thus

to conceal and disguise the real object proposed by the provisions of an Act under a false or deceptive title. It could not have been intended to forbid the passage of an Act which should have in view, at the same time, the public good and the good of particular individuals; or which should have the combined object of honoring the dead and benefiting the living; which seems to have been the object of the Act in question. Its great and leading object is to benefit the living, and this it proposes, in part, to do by paying a tribute of respect to the memory of the departed. We do not think it justly obnoxious to the objection urged to its constitutionality. And we are of opinion that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.