**RODGERS v. TOBIAS. (No. 7925.)**

(Court of Civil Appeals of Texas. Galveston. Nov. 4, 1920. Rehearing Denied Dec. 2, 1920.)

1. **Master and servant** ⟐302(6) — **Employer not responsible for injury by hotel clerk playing with guest's gun discharged against bystander.**

Where a hotel patron left his pistol back of a desk and told the clerk that he was leaving the gun for a few minutes and that the clerk should not bother with it, for it was loaded, and the clerk picked it up and in twirling it around his fingers caused it to explode and kill a newsboy standing near, the hotel keeper was not liable; the acts of the clerk not having been done within the scope of his employment or in the furtherance of the employer's business.

2. **Statutes** ⟐117(8) — **Statute giving cause of action for death and making natural person liable for wrongful act of agent held void as covering subject not embraced in title.**

Rev. St. 1911, art. 4694, as amended in 1913 by an act (Laws 1913, c. 143[1]) entitled "An act to amend article 4694 of the Revised Civil Statutes of 1911, giving cause of action where injuries resulting in death is caused by the negligence of a corporation, its agents or servants, and declaring an emergency," *held* void in so far as it makes a natural person liable for a wrongful act of his agent; such provision not being embraced in title, in violation of Const. art. 3, § 35.

3. **Statutes** ⟐117(8)—**Title referring to statute to be amended with description provides only for subjects embraced within description.**

Act of 1913 (Laws 1913, c. 143[1]), entitled "An act to amend article 4694 of the Revised Civil Statutes of 1911, giving cause of action where injuries resulting in death is caused by the negligence of a corporation, its agents or servants, and declaring an emergency," *held* not to authorize provisions relating to all subjects covered by the specified article, but only such subjects as are embraced in the portion of the title describing the statute to be amended.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by W. F. Tobias against Richard Rodgers. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Andrews, Streetman, Logue & Mobley, W. L. Cook, R. H. Kelley, and E. J. Fountain, Jr., all of Houston, for appellant.

A. B. Wilson, of Houston, for appellee.

GRAVES, J. The judgment here appealed from allowed the appellee a $4,000 recovery in damages for the death of his nine year old son, which occurred under these circumstances:

Appellant, Richard Rodgers, operated the Woods Hotel in Houston, Tex., a Mr. Lowery being in exclusive charge as his clerk at the time here involved. This further statement of what followed, admitted by the appellee to be correct, is taken from appellant's brief:

"One Rucker lived in this hotel. On the occasion in question Rucker was going to a nearby tailor shop to change his clothes, and, before going, went by the desk in the hotel and laid his gun back of the desk, telling the clerk, 'I am going to leave my gun for about ten minutes and I will be back and get it, but don't bother with it, for it is loaded.' He went to the tailor shop, and after he had been gone several minutes he heard a shot fired. The clerk had picked up the gun and played with it two or three minutes, whirling it between his fingers. One witness described his action as 'a sort of Douglas Fairbanks stunt.' A newsboy (appellee's nine year old son) came into the hotel, and the clerk, continuing to play with the gun, started talking to him. All of the witnesses to the accident said that he was 'kidding' or trying to scare the boy. At the end of one of the whirls of the pistol about the fingers of the clerk it was discharged, and the bullet therefrom penetrated the boy's head. Subsequently, the boy died."

The entire evidence was by depositions taken, and introduced on the trial by the plaintiff below, and there is no dispute of any sort as to the facts.

As by appropriate procedure he did in the trial court, appellant in this court challenges his liability upon the undisputed facts given on two grounds:

(1) The acts of Lowery, the clerk, were not done within the scope of his employment or in furtherance of his employer's business, but were his own independent acts, performed for his own purposes in response to motives of his own, and were therefore individual torts of the clerk for which appellant was not responsible.

(2) Article 4694 of our Revised Statutes as amended in 1913, in so far as it attempts to authorize a recovery against natural persons by reason of the negligence, unskillfulness, or default of their servants or agents, is unconstitutional and void, because no such subject was expressed in the title of the act.

Extended argument upon the matter has convinced this court that both positions are well taken.

No distinction in the principle by which it is ruled, we think, can be made between this case and G., H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367. Without attempting to make a comparison of the facts underlying the two causes, it is deemed sufficient to say that in our opinion those of the case at bar bring it clearly within these particular ones, among others, of the general principles enunciated by our Supreme Court in the Currie Case:

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Vernon's Sayles' Ann. Civ. St. 1914, art. 4694.

"The case is controlled, in our opinion, by the proposition, in which all authority agrees, that when the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone. * * *

"It is in cases of the character supposed, where there has been a mingling of personal motive or purpose of the servant with the doing of his work for his employer, that much of the difficulty and conflict of opinion have arisen in determining whether or not the wrong committed should be ascribed to the master, or be regarded as the personal tort of the servant alone. It is now settled, in this state at least, that the presence of such a motive or purpose in the servant's mind does not affect the master's liability where that which the servant does is in the line of his duty and in the prosecution of the master's work. But when he goes entirely aside from his work and engages in the doing of an act not in furtherance of the master's business but to accomplish some purpose of his own, there is no principle which charges the master with responsibility for such action. * * *.

"We cannot agree to the proposition, to which this contention would come, that, because an instrumentality may become dangerous to others, its owner, when he commits it to his servant to be employed in his business, makes himself responsible for everything the servant may do with it. His responsibility is for the management of his business, by the servant and not for injuries done by the servant's independent conduct of his own affairs. * * *

"It may be just to charge a master with liability for the failure of a servant to properly guard a dangerous agency, with the duty of guarding which the servant has been intrusted, when in consequence of such failure injury proximately results to another; but to say that the master, assuming that there has been no negligence in selecting and retaining the servant, is liable for the independent act of that servant in diverting the thing from the master's business and using it in his own, or as an instrument of malice or amusement, is to lose sight of the principle underlying the whole subject."

To the same effect are I. & G. N. Ry. Co. v. Cooper, 88 Tex. 607, 32 S. W. 517, and T. & G. N. Ry. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902, respectively.

[1] That the unfortunate servant in this instance turned aside from his master's business and engaged in an affair wholly his own long enough to thereby cause the death of the little newsboy is an inevitable finding from the evidence. So far as his master's business was concerned, there was under the specific directions of its owner and otherwise no occasion whatever for him to do anything at all about the pistol except to leave it alone for about ten minutes. Its known character as being loaded and dangerous made this all the more imperative. Though

a servant, he was still an independent being with capacity to engage in projects of his own, which his master could not control, and, when he did so, the master was not responsible. The case is therefore not one of an injury resulting from his mere neglect to perform some duty resting upon his master, but one directly flowing from the positive personal wrong of the servant.

[2] The other ground upon which we have said a recovery should have been denied is our view that the second provision in article 4694, amended in 1913 (Laws 1913, c. 143), which undertakes to visit upon natural persons responsibility for deaths caused by the wrongful act, neglect, unskillfulness, or default of their agents or servants, is clearly unconstitutional. The paragraph of the amended act referred to is as follows:

"(2) When the death of any person is caused by the wrongful act, neglect, unskillfulness or default of another person or corporation, their agents or servants."

Section 35 of article 3 of the Constitution of Texas provides that no bill other than for appropriations shall contain more than one subject, which shall be expressed in its title, and, in case a subject not expressed in the title is included in the body of the act, the law "shall be void only as to so much thereof as shall not be expressed."

The full title of the act in question is:

"An act to amend article 4694 of the Revised Civil Statutes of 1911, giving cause of action where injuries resulting in death is caused by the negligence of a corporation, its agents or servants, and declaring an emergency."

There is nothing in this title about a cause of action for injuries resulting in death caused by an individual person's negligence, or that of his agent or servants; the remedy provided having exclusive reference to such injuries as are caused by the negligence of a "corporation, its agents or servants." Neither did the act itself, or its title, as it stood before the amendment of 1913, ever in its history make individuals liable for damages for injuries resulting in death when caused by acts of their agents or servants. The language used in the caption of our first death injury statute in 1860, as well as in the body of each subsequent revision of it down until the one of 1913, was "the act of another," never "the act of another, his agents, or servants." See Gammel's Laws of Texas, vol. 4, p. 1394, for Act February 2, 1860; volume 9, p. 842, for Act of March 25, 1887; and volume 10, p. 369, for Act of April 11, 1892.

Indeed, in a number of cases it was held that no such liability on the part of individuals existed. Cole v. Parker, 27 Tex. Civ. App. 563, 66 S. W. 135; Hendrick v. Walton, 69 Tex. 192, 6 S. W. 749; Hargrave v. Vaughn, 82 Tex. 347, 18 S. W. 695; Parker v. Dupree, 28 Tex. Civ. App. 341, 67 S. W. 185; Mo.,

etc., R. Co. v. Freeman, 97 Tex. 394, 79 S. W. 9, 1 Ann. Cas. 481.

[3] There being then throughout the prior history of the law on the subject no liability of individuals in such cases for the acts of their agents or servants, and the title of this 1913 revision containing no reference to any such subject, it is no answer to the constitutional objection here raised against the present law to say, as the appellee does, that its title refers to the article amended and is therefore sufficient. There might be some force in that suggestion if the title of the amendment simply referred to the act to be amended and the amendment itself were germane to the subject of the former act, as a number of authorities hold. State v. McCracken, 42 Tex. 383; Gunter v. Texas Land & Mtg. Co., 82 Tex. 496, 17 S. W. 840; Eng. & Scottish American Mtg. & Inv. Co. v. Hardy, 93 Tex. 289, 55 S. W. 169; Ward v. Harris County, 209 S. W. 792; Gibson v. Sterrett, 144 S. W. 1189. But such is not the case. The title to this act does not read, merely, "An act to amend article 4694 relating to actions for injuries resulting in death," but goes further and affirmatively declares an express purpose to amend the pre-existing statute in a certain specific way. It cannot therefore be given the effect of a mere simple reference in a general way, but would be interpreted by the rule that "the mention of one thing is the exclusion of another." Adams v. Water Co., 86 Tex. 485, 25 S. W. 605. It accordingly does not, we think, either upon its face or by reference to the acts theretofore in force, contain any more direct attention to the liability of an individual for fatal injuries caused by the acts of agents or servants than it does to some entirely foreign subject.

It seems to us the precise question here involved—upon facts in no wise different in effect—was determined both by this court and the Supreme Court in accord with the view already expressed in Ward C. & P. Co. v. Carpenter, 200 S. W. 521. In that case Matagorda county (under the Revised Statutes, article 7235) had been included among the counties entitled to the benefit of the stock law. In 1913 (Laws 1913, c. 72 [2]) an attempt was made to amend that article, the title of the amendatory measure first referring to article 7235 and then adding that it was to be so amended as to include a number of other counties; Matagorda being omitted. That county was likewise omitted from the body of the new act. In holding the new title violative of the Constitution and the amended act ineffective as excluding Matagorda county from the operation of the stock law, our Supreme Court, after quoting the title in full, said:

"No one reading this title could reasonably conclude that the purpose of the act was other than to merely enlarge article 7235 so as to have it include in its designation of the counties privileged to prohibit the running of stock at large, the additional counties named. The statement that the article was to be amended as to 'counties named so as to include' those referred to was a distinct assurance that the subject of the act was a limited one, and that its scope was to amend the article in that way and no other. This is true, whether the term, 'counties named,' be construed as meaning those named in the original article or those named in the amendatory act. The phrase, 'so as to include,' etc., of itself, definitely fixes the character of the amendment as one seeking no other alteration in the original article than to bring the additional counties within its purview. This is the plain sense of the language, and no amount of reasoning can change it. It gives no hint that Matagorda county, or any other county found in article 7235, was to be dropped from the article and excluded from its benefits. If it was intended to signify that such was to be the effect of the act, it was a deceptive and misleading title."

A like result obtains in this instance. The title here having gone beyond a simple reference to the prior law, in that it specifies the particular field the amendment is to cover, will not be held to furnish the proper legislative prelude to an act dealing with a wholly different subject. See article 3, § 35, Constitution of Texas; Adams v. Water Co., 86 Tex. 485, 25 S. W. 605; M., K. & T. Ry. Co. v. Mahaffey, 105 Tex. 394, 150 S. W. 881; M., K. & T. Ry. Co. v. State, 102 Tex. 153, 113 S. W. 916.

So much of the act as attempts to extend the liability to individual persons as a result of the acts of their agents or servants is therefore null and void. Other questions raised become immaterial.

Pursuant to the conclusion that no liability was shown upon the part of appellant, the judgment entered against him below is reversed, and the cause is here rendered in his favor.

Reversed and rendered.

---

[2] Vernon's Sayles' Ann. Civ. St. 1914, art. 7235.