## CITY OF CROSS PLAINS v. RADFORD et al.

No. 1314.

Court of Civil Appeals of Texas. Eastland.

June 1, 1934.

Rehearing Denied June 29, 1934.

Scarborough & Ely, of Abilene, for appellant.

W. P. Dumas, of Dallas, Smith & Eplen, of Abilene, and S. W. Marshall, of Dallas, for appellees.

FUNDERBURK, Justice.

Cross Plains, a city incorporated under the general laws, having a population of less than 5,000 inhabitants, and owning a water system and a sewer system, contracted with

the Municipal Engineering Company for the construction of improvements to said water and sewer systems. In part payment therefor, $67,000 worth of revenue bonds were issued and delivered to the contractor. The contract was made, and bonds issued and sold under the purported authority of R. S. 1925, arts. 1111, 1112, and 1113, as amended by chapter 194, p. 276, General Laws of 1927. Each of the bonds contained the recitation that: "The holder hereof shall never have the right to demand payment of this obligation out of any funds raised, or to be raised, by taxation." The net revenues of both the water and sewer systems were appropriated for the payment of the bonds. For further security thereof, a mortgage with power of sale was given covering the water system and the sewer system. The action of said city in thus incumbering the water and sewer systems and pledging and incumbering the revenues thereof was not authorized by any election. Most, if not all, of the improvements were made upon the water system. The record does not clearly show that none were made upon the sewer system. The improvements were constructed in compliance with the contract.

The city of Cross Plains brought this suit against J. M. Radford and Republic National Bank & Trust Company, the owners and holders of said bonds, to cancel same. The defendants, by their several cross-actions, established that they were the owners and holders in due course of all said bonds (each holding several parts of the entire issue), acquired before any maturities thereof were past due, and before any matured payments had been dishonored, and taken in good faith for value without any actual notice of any infirmities in the bonds, or any defect in the title of the party from whom purchased, "save and except such as arises from the face of the bonds, and such as may be charged as a matter of law from the bonds." One of the grounds upon which cancellation was sought, besides want of authority to create the obligations and incumber the water and sewer systems, was alleged fraud on the part of the engineering company. The improvements were averred to be worthless for the purposes intended, and, in effect, so found by the court.

The trial court denied the plaintiff any recovery, and upon the cross-actions adjudged the bonds to be valid obligations according to the provisions thereof. The plaintiff city has appealed.

Appellant, in its brief, makes two contentions, which, upon the submission of the case, were conceded to have been determined contrary thereto by the recent decisions of the Supreme Court in City of Dayton v. Allred, 68 S.W.(2d) 172, and McCann v. Akard, 68 S.W.(2d) 1033. By the first of said propositions, it was asserted that the bonds represented debts and were void under sections 5 and 7 of article 11 of the Constitution, which prohibits the creation of a debt, for any purpose, unless provision is made at the time of creating the same to assess and collect annually a sufficient sum by way of taxation to pay the interest and create a sinking fund of at least 2 per cent. By the other proposition, it is asserted that the mortgaging of said utility systems was void, because contrary to section 9 of article 11 of the Constitution, which exempts from forced sale the property of cities and towns owned and held only for public purposes and devoted exclusively to the use and benefit of the public. The questions involved in these propositions appear to have been determined in City of Dayton v. Allred, supra, and, upon the authority thereof, the propositions are overruled without further comment.

Appellant's third proposition is as follows: "The act of 1927, insofar as the phrase 'or for extensions,' as used in the second section of the act is void for the reason that its purpose was not disclosed by the caption." The title to said chapter 194, General Laws, 1927, reads as follows: "An Act to amend Articles 1111, 1112, and 1113 of the Revised Statutes of Texas, pertaining to the encumbrance of lighting and water systems and income thereof by cities and towns to secure payment of funds for the purchase or improvement thereof, including therein the power to encumber sewer systems and the income thereof for said purposes, and declaring an emergency."

By reference to R. S. 1925, arts. 1111, 1112, and 1113, as existing before said amendment, it is apparent that the subject-matter thereof was well described in said title to the amendatory act in the following words: "Pertaining to the encumbrance of lighting and water systems and income thereof by cities and towns to secure payment of funds for the purchase or improvement thereof." It thus appears that said title identified the statutes intended to be amended first by naming the articles of the Revised Statutes, and, secondly, by stating the subject-matter thereof. After thus identifying the statutes intended to be amended, the title reads: "Including therein the power to encumber sewer systems and the income thereof for said purposes, and declaring an emergency." The title did not stop with naming the articles to

be amended, and stating their subject-matter with a general declaration that they were to be amended, but in the last-quoted provision stated the nature of the amendment which it was proposed to make. Article 1111, before said amendment, empowered cities and towns operating thereunder to mortgage and incumber their light system, or water system, either or both, and the franchise and income thereof, and everything pertaining thereto, acquired, or to be acquired, to secure the payment of funds for certain purposes. Eight purposes were enumerated as follows: (1) To purchase same; or (2) to purchase additional water power; (3) riparian rights; or (4) to build; (5) improve; (6) enlarge; (7) extend; or (8) repair such system, or either of them. By provision of article 1112, if the amount of a proposed incumbrance exceeded $5,000, it was required that same be authorized by a majority vote of the qualified voters of the cities or towns, with one exception, which was if the incumbrance was to secure the payment of "purchase money" no election was required. Said article named two exceptions, but one, "to refund any existing indebtedness," was manifestly not included in the eight enumerated purposes, and therefore, could not be, strictly speaking, an exception.

■ Considering these provisions of the statutes before amendment, what was the subject of House Bill, No. 613 (said chapter 194, General Laws of 1927, p. 276)? Whatever the subject was, it was required by section 35 of article 3 of the State Constitution to be expressed in the title of the act. From a reading of the title it is obvious that it complies perfectly with the constitutional requirement that a bill contain no more than one subject. That subject was plainly the extension of the provisions of R. S. 1925, arts. 1111, 1112, and 1113, so as to include sewer systems, and the income thereof. The title carried notice to members of the Legislature, and to citizens generally, that the sole purpose of the amendatory act was to restate the existing provisions of articles 1111, 1112, and 1113, then applicable only to light and water systems, and the income thereof, so as to include with them, sewer systems, and the income thereof. By thus definitely specifying the change proposed to be made in the law, the title, by implication, negatived the purpose to make any other change. The title, therefore, carried no notice of a purpose to add any other exception to the theretofore existing requirement that where the incumbrance was to exceed $5,000 it must be authorized by a majority vote of the qualified voters. As said before, the only exceptions then existing were (1) for "purchase money," and (2) "to refund any existing indebtedness." Not only did the title carry no notice of a purpose to add a further exception, but by implication it gave notice that there was no purpose to add any other exception. In the body of the amendatory act, article 1112 purports to add a third exception, namely, "for extensions." The former exception read: "Except for purchase money, or to refund any existing indebtedness." R. S. 1925, art. 1112. By the amendment, the exceptions were stated as follows: "Except for purchase money, or for extensions, or to refund any existing indebtedness." Chapter 194, General Laws, 1927, p. 276. We cannot escape the conclusion that said amendment of 1927, in so far as it purports to authorize the incumbering of the water and the sewer systems, for more than $5,000, to secure payment for extensions to either or both systems without being authorized by an election, is rendered void by said constitutional provision. Hamilton v. St. Louis, F. F. & T. Ry. Co., 115 Tex. 455, 283 S. W. 475; Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799, 803; Adams v. San Angelo Water Works Co., 86 Tex. 485, 25 S. W. 605, 606; Ward Cattle & Pasture Co. v. Carpenter, 109 Tex. 103, 200 S. W. 521; Rodgers v. Tobias (Tex. Civ. App.) 225 S. W. 804; Tadlock v. Eccles, 20 Tex. 782, 73 Am. Dec. 213; Eastland County v. Ford (Tex. Civ. App.) 23 S.W.(2d) 848; 59 C. J. 819, § 400.

■ The first case cited is authority for the proposition that if the title of an act definitely specified the change intended to be made in the law, any other change provided for in the body of the act, and not within that specified in the title, will be void. In that case the emergency clause was looked to as a means of rendering certain the change in the existing law intended to be made by the amendment. In the instant case there is no ambiguity in the title requiring recourse to the emergency clause in order to render certain the change intended to be made in the statutes.

In Arnold v. Leonard, supra, the court said: "The caption is not content to state a purpose to amend certain statutes, but proceeds to specify the nature of the proposed amendment. Thus the caption declares that the amendment consists of a provision authorizing the wife, on order of the district court, to convey her separate real estate, bonds, and stocks without joinder by her husband, when he is insane or has permanently abandoned his wife. This language not only gives no notice of an intention to change the status of certain property from commu-

nity property to the wife's separate property, but completely disguises any such intention. A caption concealing the true purpose of a statute, and stating an altogether distinct and foreign purpose, is necessarily deceptive, and cannot be sustained as complying with section 35 of article 3 of the Constitution."

In Adams v. San Angelo Water Works Co., supra, the title of the act in question reads: "An Act to amend an Act to regulate the condemnation of property in cities and towns for the purpose of opening, widening, or changing public streets, avenues, or alleys, or for water mains or sewers, approved March 28, 1883." (Laws 1889, c. 5, p. 3)

In the body of the act it was undertaken to add to the purposes named that of "supply reservoirs." The court, in holding the provision void because the title gave no notice of same, said: "If the subject as expressed in the title had been to authorize the condemnation of property for water works, it would have embraced every subject embodied in the act in relation to that matter. But the maxim that the mention of one thing is the exclusion of another, is not only a legal, but a logical rule; and it applies with peculiar force to the question of notice. The expression of a purpose to confer authority by an act of the legislature to give the power to condemn property for water mains not only fails to give notice of the purpose to confer such power in reference to reservoirs, but is calculated, on the contrary, to lead to the belief that the latter purpose is not intended."

Just so, in the instant case, we think, the expression of a purpose by the amendment to include in the previously existing provisions relating to light and water systems, and the income thereof, sewer systems, and the income thereof, not only fails to give notice of a purpose otherwise to change the previous law, but is calculated on the contrary to lead to the belief that no such change was intended.

In Ward Cattle & Pasture Co. v. Carpenter, supra, the title to an amendatory act, the sufficiency of which was in question, reads, "An Act to amend article 7235, Chapter 6, Title 124, of the Revised Civil Statutes of Texas, 1911, with reference to the mode of preventing horses and certain other animals from running at large in counties named, so as to include" certain named counties. (Laws 1913, c. 72, p. 131).

The article of the statutes intended to be amended included Matagorda county. The amendatory act, in the body thereof, excepted that county. The court held that the amendatory act was not effective to exclude Matagorda county, because of the failure of the title to give notice of such subject. The court said: "No one reading this title could reasonably conclude that the purpose of the Act was other than to merely enlarge Article 7235 so as to have it include in its designation of the counties privileged to prohibit the running of stock at large, the additional counties named. The statement that the article was to be amended as to 'counties named so as to include' those referred to was a distinct assurance that the object of the Act was a limited one, and that its scope was to amend the article in that way and no other. * * * The phrase, 'so as to include,' etc., of itself, definitely fixes the character of the amendment as one seeking no other alteration in the original article than to bring the additional counties within its purview. This is the plain sense of the language, and no amount of reasoning can change it. It gives no hint that Matagorda County, or any other county found in Article 7235, was to be dropped from the article and excluded from its benefits. If it was intended to signify that such was to be the effect of the Act, it was a deceptive and misleading title. * * * True, according to previous decisions of this court, if the title had only declared that the purpose of the Act was to amend Article 7235 of the Revised Statutes, it would have supported an act amending the article so as to omit Matagorda County. But with this title announcing, as it does, that the article was to be amended in a particular way, no legislator would reasonably have conceived that it was to be amended in another way exactly contrary to that statement."

These decisions support a principle, which seems to be well stated by C. J., as follows: "Similarly, where the title of an amendatory act specifies the particulars in which the prior legislation is to be amended, the body of the act may not contain any other matters." 59 C. J., p. 819, § 400, note 84.

It follows from the conclusion just stated that if the purpose for which the water and sewer systems have been attempted to be incumbered was to secure the payment of funds to pay for extensions to the water or sewer systems, either, or both, or for any of the other purposes authorized in article 1111, except for purchase money, the bonds in question are void because their issuance was not authorized as required by a majority of the qualified voters of the city of Cross Plains. The purpose for which the bonds were issued was stated to be for the "construction of improvements to the water and sewer systems."

There is no contention, nor could there be any valid contention, that the attempted incumbrance was to secure payment of the purchase money of a water system, or a sewer system, as contradistinguished from the improvement of same. It must follow, therefore, in our opinion that the issuance of the bonds was unauthorized by law, and that they are void.

It becomes unnecessary for us to determine whether the nature of the improvements made upon the water and sewer systems, or either or both of them, could properly be regarded as "extensions." Any possible distinction between "extensions" and "improvements" is by the conclusion above stated rendered immaterial. The law excepted neither from the requirement of an election to authorize same.

It was contended in oral argument that all the improvements were made upon the water system, and that therefore under the decision in City of Dayton v. Allred, supra, the attempted incumbrance of the sewer system was void. The above statement of the case shows that the record does not enable us to pass upon this point. It may not be amiss, however, to say that in the case of City of Dayton v. Allred, supra, the court stated two conclusions which seem to require construction. The court expressed its disagreement with the contention that one utility system, or the income thereof, could not be incumbered to pay for improvements of another and distinct system. The provisions of the statute were quoted as authority. But the court also held that the income from a water works system could not be incumbered for more than $5,000 to pay part of the purchase price of a new sewer system without an election, although the latter system and the income thereof could be incumbered for more than $5,000, without an election, to pay for such purchase. The court seems thus to hold to the view that although different utility systems, as provided in the law, may be incumbered, one for the benefit of another when authorized by an election, the exceptions provided in the statutes for such incumbrances without an election do not apply when it is proposed to incumber one system, or the income thereof, for the benefit of another.

It is likewise unnecessary to determine whether the defense of fraud was available against liability upon the bonds, were they otherwise valid.

Being of the opinion that the bonds and

incumbrances of the water and sewer systems were void, for the reasons discussed, and that the judgment of the court below should be reversed and judgment rendered in favor of the appellant canceling said bonds and incumbrances, it is accordingly so ordered.

### On Rehearing.

The argument in appellees' motion for rehearing, by which they seek to show that we erred in our decision of the constitutional question, presents nothing which was not fully considered in the original opinion. We deem it unnecessary to write further upon that question.

■ The point that even if the bonds were void for the reasons discussed in the original opinion, the same were nevertheless validated by the provisions of section 7, c. 122, p. 320, General Laws, passed by the 43rd Legislature (Vernon's Ann. Civ. St. art. 1114c), is new and requires further notice. The provision is as follows: "The actions of all cities and towns and of all officials in passing ordinances, adopting resolutions, executing securities and delivering securities to accomplish the objects permitted under this Act are hereby expressly authorized and validated in like manner as if this law had been effective at the time of such actions, subject to the provisions of Section 5."

We shall assume, without deciding, that this act validates everything which it purports to validate. We are of the opinion that it does not purport to validate the bonds in question. Some of the language standing alone may, be conceded to be broad enough to do so. If so, however, that language is limited by the provision that the validation is "in like manner as if this law had been effective at the time of such actions," etc. Said chapter 122, General Laws of the 43rd Legislature, of which said section 7 is a part, does not authorize the issuance of the bonds in question in excess of $5,000 for extensions, without a vote of the people. If, therefore, said act had been in force when the bonds were issued, they would not have been valid. It seems clear that the validating provision is limited to such acts and proceedings as would be valid under such later act.

It is therefore our conclusion that the motion for rehearing should be overruled, and it is so ordered.