JOHN S. JOHNSON v. R. F. CAMPBELL.
JOHN S. JOHNSON v. CHARLES WERTZNER.
JOHN S. JOHNSON v. JAMES B. COPE.

1. Where it appears that an act which the officer is desired to perform is ministerial in its character, and is plainly required of him by law, its performance will be compelled by *mandamus*.

2. The duties of a county treasurer are ministerial, and he had no authority to dispute a voucher approved by James Davidson, Chief of Police, under the act of May 2, 1871, which was issued for police service in the county.

3. It was the duty of the county treasurer to pay such a voucher, and the county court had no jurisdiction or control over it.

4. The act of July, 1870, authorizing the Governor to appoint special policemen, and providing for their payment, was not in violation of the Constitution.

APPEAL from Bastrop. Tried below before the Hon. J. P. Richardson.

The cases of Johnson v. Wertzner and Johnson v. Cope were by agreement of counsel to abide the decision in Johnson v. Campbell.

On the eighth of March, 1872, R. F. Campbell filed his petition to compel, by *mandamus*, John S. Johnson, treasurer of Bastrop county, to pay him $675. This was the sum alleged to be due to parties named for services as special policemen, in Bastrop county, between the tenth of September and the sixteenth of October, 1871, and for which vouchers were issued by Thomas Williams, who signed the same as "lieutenant State police in

charge." These vouchers were approved by James Davidson as "Adj't Gen'l and Chief of State Police," and were presented to Johnson and registered as claims against the county. Campbell sued as the owner of these registered vouchers. He alleged the official character of Johnson ; that these claims had been presented to him for payment ; that there was abundant money in the county treasury not otherwise appropriated to pay the vouchers ; and that there were no other claims against the county having preference under the law to priority of payment ; that Johnson refused to pay them, though he had been advised by Attorney-General Alexander to pay them, "totally regardless of any comments of the police court." Attached to the petition is an exhibit showing that Johnson had requested the police court of Bastrop county to pass on the claims, and that they had entered an order reciting that, in their opinion, "it is outside of the jurisdiction of this court."

Johnson, in his answer, alleged that the claims were fraudulent and unjust ; that the parties (whose names were given) to whom the vouchers were issued confederated and conspired to corruptly and illegally control the election then pending for representative of the Fourth Congressional District of the State, in the interest of E. Degener, and against John Hancock, his rival candidate ; that in pursuance of said conspiracy they applied for commissions as special policemen, and obtained them by false representations ; that in carrying out the common design they intimidated and compelled certain persons to register, and illegally and wantonly overawed and deterred others from registering and voting for Hancock ; that there was no necessity for a special police, and the positions were sought and prostituted in furtherance of the conspiracy.

A demurrer to the petition was overruled, and a demur-

rer to the answer sustained. Judgment and *mandamus* against Johnson to compel payment of the vouchers, from which he appealed.

*Jones & Sayers*, for appellant.—1. *Mandamus* does not lie to compel a treasurer to pay money out of the treasury. (Houston Tap and Brazoria R. R. Co. v. Randolph, 24 Texas, 317.)

2. The petition shows no cause of action. This suit is brought upon a claim originating under "An act to amend an act entitled 'An act to establish a State Police, and provide for the regulation of the same,'" approved July 1, 1870.

The act in question, in so far as concerns the case at bar, is clearly unconstitutional. (Art. 12, Sec. 17, Constitution.) "Every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title." We submit that the extraordinary power conferred upon the Governor to appropriate the funds of a county at pleasure is not expressed in the title of the act referred to.

3. Article 12, Section 19, Constitution, declares "Taxation shall be equal and uniform throughout the State."

If the Legislature may control the county treasury, directing the appropriation of funds arising from taxation, and imposing special burdens upon particular counties, it follows that the people of one county may be compelled to support special police, while those of other counties are entirely exempt.

4. Section 16, Bill of Rights, declares, "No citizen of this State shall be deprived of life, liberty, property or privilege, outlawed, exiled, or in any manner disfranchised, except by due course of the law of the land."

A county representing a community of citizens is as fully within the protection of this section of the Bill of

Rights as an individual; else that which could not be done directly might be done indirectly. For, if a county is at the mercy of a Governor, it would be difficult to perceive security to the citizen. Proscription and spoliation might be less disagreeable to one as a member of a community than as an individual, but surely would be none the less real and substantial.

5. But conceding the constitutionality of the act, the return or answer was sufficient. This proposition involves but one question—could the claim as authenticated or adjudicated be attacked for fraud? If it could, then the demurrer to the return or answer ought to have been overruled, and the issues of facts tried. Concede the matter was *res adjudicata*, and the county had no right to be heard, the disposition and use of county funds arising from taxation being absolutely in the control and at the discretion of others, still the demurrer cannot be sustained. A judgment or decree obtained through fraud may be avoided by bill in chancery. (Williams v. Fowler, 2 J. J. M. Ky. R., 405.)

Fraud vitiates everything, even the most solemn determinations of courts. (Talbott v. Todd, 5 Dana Ky. R., 192.) If judgments of courts may be impeached for fraud, certainly an *ex parte* proceeding in which the party to be charged is not heard, cannot claim exemption.

We respectfully submit that the judgment ought to be reversed.

*Fowler & Wilkes*, for appellees.

Walker, J.—These cases are submitted together and present one and the same question for decision.

The points made by the appellant are, first, that *mandamus* will not lie to compel him to pay money out of

the county treasury; and second, that the act authorizing the Governor to appoint special policemen and provide for their payment is unconstitutional, because the object of the act is not embraced in its title, the tax is not equal and uniform throughout the State, and that under the provisions of the act a citizen of the State may be deprived of his property without due course of law.

And it is also argued that, conceding the constitutionality of the law, a demurrer to the return should not have been sustained, because the return alleges that the relator's claims were obtained by fraud.

In support of the first objection the appellant refers to the Houston Tap and Brazoria Railway Company v. Randolph, 24 Texas, 317.

This case decides no more than was decided by this court in the Great Northern R. R. Co. v. Kuechler. Where the act to be done is ministerial in its character, and the relator shows by his petition that he has a clear right to, and that it is plainly the duty of the officer proceeded against to perform the act demanded, *mandamus will* lie to compel the performance of the act.

The duties of the county treasurer are ministerial; they are plain and specific. He has no judicial authority to determine the validity of a warrant or voucher presented for payment.

This authority is vested elsewhere.

We do not think he has any discretion to resist the payment of a voucher when it has been properly allowed by the county court and presented for payment, nor do we think in this case he has any authority to dispute the vouchers in question. The act of May 2, 1871, makes the adjudication of the Chief of Police on claims of this kind final.

The county treasurer has his remedy if a warrant is presented which he considers of doubtful legality, by re-

ferring the question to the county court. (Art. 1101, Pas. Dig.)

This is in ordinary cases; but the law does not leave this class of claims, which have been passed upon by the Chief of Police, to be referred to the county court. We do not see that the county treasurer has any discretion in this matter.

The record, however, shows that these claims were referred to the county court, and that court seems to have determined that it had no jurisdiction, and that the matter was regulated by the act of May 2, 1871. It may not be improper to remark here that the appellant, acting perhaps from abundant caution, had obtained the opinion of the Attorney-General, and was thereby advised to pay these claims.

We do not think that the constitutionality of this law can be tested in this proceeding (see League v. De Young *et al.*, 2 Texas, 497); but waiving this point, we hold that the act in question, authorizing the Governor to appoint special policemen, and providing for their payment, approved July, 1870, is not subject to the objections urged against it, and the judgment of the District Court is therefore affirmed in each of the cases here submitted.

Affirmed.