

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
~~WILLIAMSON~~
ATTORNEY GENERAL

Honorable J. C. Hamilton
County Auditor
Ector County
Odessa, Texas

Dear Sir:

Opinion No. O-6418
Re: Is Ector County liable to a County
Commissioner who was inducted into
the military service for his
salary while in the military ser-
vice from October 15, 1944, to
December 31, 1944? And related
questions.

Your request for an opinion on the above matters has
been received and carefully considered. We quote said request
as follows:

"I am submitting herewith the following ques-
tions for construction and application, to-wit:

"The facts are that the Commissioner of Pre-
cinct No. 4 of Ector County, Texas, was inducted
into the United States Navy. He did not resign
his office as Commissioner when he was inducted.
The County Judge of Ector County, Texas, after
the induction of the Commissioner declared the
office vacant and appointed a successor to the
absent Commissioner. The successor filed his
bond and otherwise duly qualified himself to act
as Commissioner, and did act as such Commission-
er from on or about the 15th day of October, A.D.
1944 to the 31st day of December, A.D. 1944, at
which time the term of the Commissioner expired
(the Commissioner of Precinct No. 4 who was in-
ducted into the Navy was not a candidate for re-
election to office). The county paid the salary
of the absent Commissioner for the two and one-
half months that he served to the successor.

"The Commissioner who was inducted into the
military service has made demand upon the county
for the payment of his salary.

"I submit to you the following questions:
(1). Is Ector County liable to the Commissioner
who was inducted into the military service for
his salary from October 15, 1944 to December 31,
1944? (2). If the answer to the foregoing ques-
tion is in the affirmative, then, who is liable
to the county for the payment of the salary paid
to the person who was appointed as successor to
the Commissioner who was inducted into the mili-
tary service? (3). If the answer to the first
question is in the negative, then, is the action
of the inducted Commissioner for the recovery of
his salary against the Commissioners' Court or
against his successor to whom the salary was paid?

"I have carefully considered your Opinion No.
0-5245, and from such opinion it may be determined
that the appointment of the Commissioner to suc-
ceed the Commissioner who had been inducted into
the military service was absolutely void and of
no effect, and that the Commissioner who was in-
ducted into the military service was entitled to
the compensation incident to the office. On page
4 of the Opinion No. O-6245 the second paragraph
reads as follows:

"'It is well settled that salary
for compensation of an officer is inci-
dent to the office, and not dependent
upon services actually performed by
such officer. It is obviously true
that compensation should in no event
be paid to two County Commissioners
for the same time, for the same pre-
cinct.' (Underscoring mine)

"From a construction of the entire opinion
it would appear that there would be no question
about the payment of the compensation of the of-
fice to the Commissioner who was inducted into
the military service, but the second line of the
paragraph above quoted states that compensation
should not be paid to two County Commissioners
for the same time, for the same precinct, and
since the county has paid the compensation once
the question has arisen as to whether or not it
can be paid again.

"It would seem that if the appointment of
the successor was absolutely void then the pay-

ment of the salary to this successor was payment
to a total stranger, so to speak, although such
payment was made in good faith, and would thereby
render the Commissioner's Court liable for an
unlawful payment. But the case of Welch vs. Kent,
153 S.W. 2nd 284 would contradict this principle
where the payment was made in good faith.

"Your construction and application of your
Opinion No. 0-6245 under these circumstances
would be greatly appreciated."

You are correct in your conclusion that it may be deter-
mined from our Opinion No. 0-6245 that the appointment of the
commissioner to suceed the commissioner who had been inducted
into the military service was absolutely void and of no effect,
and that the commissioner who was inducted into the military
service is entitled to the compensation incident to the office.
It is our opinion, therefore, that your first question should
be, and it is, answered in the affirmative, and that Ector County
is liable to the commissioner who was inducted into the mili-
tary service for his salary from October 15, 1944, to December
31, 1944.

It was intended to hold by the second line of the para-
graph quoted by you from said Opinion No. 0-6245 "that compen-
sation should in no event be paid to two county commissioners
for the same time, for the same precinct", that the county would
not be legally liable to make such payments. However, since
Ector County has paid such salary to the commissioner appointed
by the county judge as a successor to the absent commissioner,
which appointment was absolutely void, the payment of such salary
to him was, as stated by you, payment to a total stranger, so
to speak, but such payment would not affect the liability of the
county to pay such salary to the commissioner legally entitled
thereto. This might cause the county to pay such salary twice,
but it would have its cause of action for such illegal payment
against those responsible therefor, as well as against the ap-
pointed commissioner who received same.

As to your second question, we adopt and quote the
following from our Opinion No. 0-4715:

"  . . . . .

"Article 2340 of the Revised Civil Statutes
of Texas, relative to bonds as shall be executed
by County Commissioners, contains in part the
following provisions:

"'. . . . conditioned for the faithful performance of the duties of his office, that he will pay over to his county all moneys illegally paid to him out of county funds, as voluntary payments or otherwise, and that he will not vote or give his consent to pay out county funds except for lawful purposes.'

". . . . .

"Under the terms of the statute hereinabove referred to (Article 2340), each commissioner was required to execute a bond conditioned for the faithful performance of the duties of his office and that he would pay over to his county all moneys 'illegally paid to him out of county funds, as voluntary payments or otherwise.' The law under which payments of salaries were made to the Commissioners of Hays County over and above the sum of $1400.00 per year being unconstituional, all sums paid to each of them in excess of said $1400.00 per year were illegally paid; therefore, each of said Commissioners is liable to repay such excess salaries so paid to him, and it is the opinion of this department, and you are so advised, that each of said Commissioners is liable for all sums paid to him over and above the $1400.00 per year provided by law.

"In further support of this conclusion, we direct your attention to the case of Kitchens et al v. Roberts, County Treasurer, 24 S.W. (2) 464. This was a suit by the County Treasurer of Wood County to recover of a county commissioner and the surety on his bond certain sums paid to said commissioner in excess of the amount due him under the general law. Said sums were demanded by and paid to said commissioner by authority of a special act of the Legislature, and the suit to recover same was on the theory that the Legislature was without power to provide by said special act for the payment to a county commissioner for his services as such a sum in excess of that fixed by general law. The trial court sustained this contention, held said special act unconstitutional and gave plaintiff judgment for the amount sued for. This judgment was affirmed by the Court of Civil Appeals and application for writ of error was refused by the Supreme Court. See also Duclos et al. v. Harris County, 251 S.W.

569, affirmed by Supreme Court, 263 S.W. 562.
The case of Cameron County v. Fox, 2 S.W. (2)
433, was a suit by a county to recover from a
tax collector premiums on bonds theretofore al-
lowed to him by the commissioners' court, and
the Commission of Appeals held that, notwith-
standing the payment to the tax collector was
voluntarily made, the amount so paid could be
recovered in an action by the county as said pay-
ment was made without lawful authority.

"As to the liability of each individual Com-
missioner under that part of his bond which pro-
vides 'that he will not vote or give his consent
to pay out county funds except for lawful purposes,'
for the excess salaries paid to each of the other
commissioners over and above said $1400.00 per
year, we refer you to the rules of law laid down
in the case of Welch et al. v. Kent et al., 153
S.W. (2) 284. This was a suit by the County
Treasurer of Jefferson County against the County
Commissioners of said County to recover the amount
of certain claims against the County which were
alleged to have been paid by said Commissioners
without authority of law, and that, as to said
Commissioners, their said act constituted a voting
and consenting to the payment of funds and moneys
out of the county funds for unlawful purposes,
and that said Commissioners neglected in said par-
ticulars to faithfully perform and discharge the
duties required of them. The trial court rendered
judgment in plaintiff's favor, and the Court of
Civil Appeals reversed and rendered said judgment
on the ground that, 'in voting "to pay out such
county funds," a county commissioner is not lia-
ble when actuated by pure motives, but only when
he acts maliciously or corruptly, or under cir-
cumstances imputing malice or corrupt motives.
He is not liable to his county for his judicial
acts, no matter how erroneous in law may be his
judicial decision, so long as he acts in good
faith.'

"Therefore, it is the opinion of this depart-
ment that each of said County Commissioners would
be liable for the excess salaries paid to each of
the other Commissioners, in addition to the amount
individually received by him, if it can be shown
that he acted maliciously or corruptly, or under
circumstances imputing malice or corrupt motive,
or without good faith. . . . . .

"Article 1649 of the Revised Civil Statutes of Texas gives the requirements of a bond for a County Auditor, and same is conditioned 'for the faithful performance of his duties.' Article 1651 of said Statute contains in part the following: 'and he shall see to the strict enforcement of the law governing county finances.'

"Article 1653 provides that he shall have continued access to and shall examine all the books, accounts, reports, vouchers and other records of any officer, the orders of the commissioners' court, relating to finances of the county, etc.

"Article 1660 of said statutes provides that all claims, bills and accounts against the county must be filed in ample time for the Auditor to examine and approve same before the meetings of the commissioners' court. That no claim, bill or account shall be allowed or paid until it has been examined and approved by the County Auditor.

"Article 1661 of said statute contains in part the following provision:

"'All warrants on the County Treasurer, except warrants for jury service, must be countersigned by the County Auditor.'

"See also 11 Tex. Jur., Sec. 52, p. 581.

". . . . . .

"The rule as to when a county auditor can be held liable for payments of compensation paid to others is laid down in the case of Welch, et al. vs. Kent, et al., 153 S. W. (2) 284, which involves a county auditor and his successor in office, as well as the county commissioners, in the following language:

"'. . . One condition of their oath and bond (Art. 1649, R.C.S. 1925) was that they would faithfully discharge the duties of their office. To constitute a cause of action against a county auditor on his bond, the pleader must allege and prove that, in the matters charged against him he acted maliciously, corruptly or negligently, 20 C. J. S., Counties, ¶ 140, p. 952; these allega-

tions must be made by the pleader because of the presumption of the regularity of the official acts of the county auditor. . . . .'

"See also the case of Wade vs. Board of Com'rs. of Harmon County, et al., 17 Pac. Rep. (2) 690, Supreme Court of Oklahoma.

"Under the statutes and rules above referred to and set out, it was made the duty of the county auditor to see that no payments of salaries were made to said county commissioners in excess of those provided for by law. Salaries having been paid to the Commissioners of Hays County in excess of those provided for by law, we hold that the County Auditor is liable for all such sums so paid, insofar as he acted maliciously, corruptly or negligently in permitting said payment to be made. It is our further opinion, however, that the same rule of good faith would apply to him as we have hereinabove held should apply to the County Commissioners, . . . .

"The general rule as to when the sureties on the bond of public officials can be held liable for the action of said public officials is laid down in the case of Jeff Davis County vs. Davis, et al., 192 S.W. 291, writ dismissed. This was a suit against the sheriff and the sureties on his bond to recover certain sums of money paid to said sheriff on claims presented by and allowed to him that were alleged to be unjust and illegal. The trial court sustained exceptions filed as to said sureties and dismissed the said suit as to them. Sustaining this action, the Court of Civil Appeals held as follows:

"'. . . . . .

"'And in Heidenheimer v. Brent, 59 Tex. 533, it was said:

"'To charge the sureties on a sheriff's bond, the act complained of must not only be one which he might rightfully do as sheriff, but which must be actually done by him as sheriff, under claim of right to do the act as such officer."

"'This statement of the law is the application of a rule by which the acts of a sheriff

for which his sureties may be held liable
can be distinguished from those acts for
which they will not be held liable. The
former are termed acts done "virtute officii",
and the later "colore officii". The distinc-
tion is this: Acts done " virtute officii"
are when they are within the authority of
the officer, but when in the doing he exer-
cises that authority improperly, or abuses
the confidence which the law reposes in him;
whilst acts done "colore officii" are where
they are of such nature the office gives him
no authority to do them. Gold v. Campbell,
54 Tex. Civ. App. 269, 117 S.W. 463, at 468.

"'. . . . . .'

"See also Miller et al. vs. Foard County,
et al., 59 S.W. (2) 277.

"Under these rules it is our opinion that the
sureties on the bond of the County Auditor would be
liable for the repayment of any and all sums paid to
said County Commissioners that the Auditor himself
would be liable for the repayment of, for the rea-
son that permitting said payments to be made to said
County officials was in violation of the terms of
his bond which provided for the faithful performance
of his duties.' In other words, the acts of the
County Auditor in approving payment of said excess
salaries to said County Commissioners was done with-
in his authority as such officer. Ordinarily these
rules would prevent the sureties on bonds of said
County Commissioners from being liable for the ex-
cess sums paid to said Commissioners, since same
were not paid in the performance of any official
duties on the part of said Commissioners; but, in
becoming sureties on the bonds of said County Com-
missioners, said sureties agreed that said Com-
missioners would 'pay over to his County all moneys
illegally paid to him out of County funds, as vol-
untary payment or otherwise, and that he would not
vote or give his consent to pay out County funds
except for lawful purposes.' This provision of
said bonds having been violated and said bonds hav-
ing embraced the liability to refund said salaries
as for money unlawfully had and received from the
County, we hold that the sureties on the bonds of
said County Commissioners are also liable for any
and all sums the Commissioners themselves will be
liable for.

" . . . . . . . . . . . "

Article 1928, Vernon's Annotated Civil Statutes, sets out the requirements of the bond of a county judge, one of which is "that he will not vote or give his consent to pay out county funds except for lawful purposes".

In the case of Steusoff et al. v. Liberty County, 34 S.W. (2) 643 writ refused, it was held that the judgments and orders of the commissioners' court approving the accounts of Steusoff, who was tax assessor of Liberty County, for sums in excess of the actual earnings of his office were absolutely void, and that Liberty County was entitled to judgment against him for such excess. See also Baldwin v. Travis County, 88 S. W. 480, writ denied, and Adams v. Stephens County, 41 S.W. (2) 989, writ refused.

It is our opinion that, under the above rules of law, the party appointed by the county judge as commissioner to succeed the county commissioner who was inducted into the military service is liable to Ector County for the salary received by him, also that the county judge, county commissioners and county auditor of Ector County, and the sureties on their respective bonds, are liable therefor, if they acted maliciously or corruptly, or under circumstances imputing malice or corrupt motives.

The appointed commissioner evidently executed the bond required by Article 2340 hereinabove referred to and, while such appointment was illegal and void and the sureties on said bond would not be liable for the salary paid to such appointed commissioner under said bond as a statutory bond, since such salary was not received by said appointed commissioner officially, therefore, was not within the conditions of such bond, it is our opinion that said sureties would be liable under said bond as a common law obligation. In support of this conclusion, we direct your attention to the following:

In the case of Hummel et al. v. Del Greco, 90 S.W. 339, there was involved a cause of action against the principal and sureties on a bond conditioned on the principal therein paying to the obligee the amount of a legatee in a will on the establishment of said will. The execution of the bond, as the principal intended, defeated the obligee's right to have the estate administered and the legacy paid in process of administration, said bond having been given voluntarily and in lieu of administration. In passing thereon, the court held as follows:

"The probate of the will ipso facto established the legacy bequeathed as a charge upon the

estate of the testator.  The bond sued upon was
executed to secure plaintiff, as legatee, in its
payment, in event the will was probated, thereby
fastening upon appellants the absolute liability
to appellee upon the happening of such event.  Its
purpose was to defeat the application of appellee,
as legatee to have an administrator of the estate
of decedent appointed with the will annexed, and
enable the principal in the bond, appellant Chas.
F. A. Hummel, to obtain and hold possession of its
assets free from charge of administration, thus
preventing appellee from exercising her right to
collect her legacy through the medium of the pro-
bate court.  This purpose having been attained
by appellant Hummel, and such right or appellee
defeated, we can perceive no reason why appellants
should not be bound by the court as they bound
themselves by their bond.

          " . . . . .

     "Let it be conceded that the bond sued upon
was not a statutory bond, and that it should not
have effected the purpose for which it was exe-
cuted; i.e. defeated the legatee's right to have
the estate of decedent administered upon and her
legacy paid in process of administration.  It was
nevertheless a common-law bond, and through it
appellants' (Hummel) purpose was accomplished,
and appellee's right defeated.  The bond having
had this effect, and being a valid and binding
common-law obligation, appellants must be held
to discharge the obligation imposed upon them-
selves by its terms.  . . . . ."

     In the case of Maddox et al.  v.  Hollums, 241 S.W.
1053, the court was considering a question where the defendant
in a sequestration proceeding had given a bond in order to hold
possession of certain property pending litigation, but only one
surety signed said bond.  However, the court held said bond good
as a common-law obligation, holding thereon as follows:

     "The replevy bond in the instant suit is
in the levy language prescribed and has all the
requirements of the above articles of the statute,
with the exception that it is signed by but one
surety, C.C. McCarthy, the appellant.  The prin-
cipal question presented by the assignments is
that of whether or not the court erred in holding,
in effect, that the bond sued upon, while not good

as a statutory bond, was, under the facts of this case, good and enforceable as a common-law obligation. This appellant surety specially insists that he is not legally liable thereon at all, as the bond is in terms purely a statutory bond, required by law to be executed by two or more sureties, and is not binding on one surety when executed by him alone. The practical and general difference between a 'common-law bond' and a 'statutory bond' is that the latter conforms to all the requirements of the statute, while the former does not. It is quite generally held that where 'the terms and conditions' of the bond substantially deviate from 'the conditions' prescribed by a statute, or where a bond is voluntarily given when not at all required by law, it is deemed a common-law and not a statutory bond. . . . . ."

The bond given by the appointed commissioner and his sureties having been a voluntary one and having had the effect to cause to be paid to such commissioner salary which would not have otherwise been paid to him, he and said sureties should be held liable under its terms and be required to pay to Ector County the salary illegally paid to him out of the funds belonging to such county.

Article 1709 of Vernon's Annotated Civil Statutes is as follows:

"The county treasurer shall receive all moneys belonging to the county from whatever source they may be derived, and pay and apply the same as required by law, in such manner as the commissioners court of his county may require and direct. (Acts 1846, p. 338; G.L. vol. 2, p. 1644; P.D. 1097.)"

Article 1713 of said statutes is as follows:

"The county treasurer shall not pay any money out of the county treasury except in pursuance of a certificate or warrant from some officer authorized by law to issue the same; and, if such treasurer shall have any doubt of the legality or propriety of any order, decree, certificate or warrant presented to him for payment, he shall not pay the same, but shall make report thereof to the commissioners court for their consideration and direction. (P. D. 1101.)"

In the case of McDonald et al., School Trustees, v. Farmer, County Treasurer, et al., 56 S.W. 555, the court had under consideration the question of the liability of a county treasurer for approving warrants payable to the county assessor which allowed said county assessor illegal commissions. In passing upon said question, the court held as follows:

"As to the treasurer, he paid the amount ordered by the commissioners' court upon a warrant drawn by proper authority. County warrants are prima facie evidence of an existing and a matured debt. Leach v. Wilson Co., 62 Tex. 332; Rev. St. arts. 876, 852. They are prima facie valid, but open to defenses. 1 Dill. Mun. Corp. ¶ ¶ 487, 502. It is the duty of the county treasurer to receive all moneys belonging to the county, and to pay and apply the same as required by law, in such manner as the commissioners' court of his county may direct. Rev. St. art. 926. Mandamus will ordinarily lie to compel him to pay a county warrant; but on account of the discretion vested in him by article 930 of the Revised Statutes, where he has any doubt of the legality or propriety of any order, decree, certificate, or warrant presented to him for payment, not to pay the same, but to make report thereof to the commissioners' court for their consideration and direction, it has been held in this state that mandamus will not lie to compel the treasurer to pay a warrant, the payment of which has been prohibited by that court. Walker v. Barnard, 8 Tex. Civ. App. 17, 27 S.W. 726. In this decision the court of civil appeals for the Fourth district refused to follow Johnson v. Campbell, 39 Tex. 83, which holds that the treasurer has no discretion, but must pay a warrant drawn in accordance with law, and that mandamus will lie to compel him to do so. If, after report to the commissioners' court, it should direct the claim to be paid, it may be at least questionable if the treasurer has any further discretion as to payment. When the treasurer has no reason to doubt the legality or the propriety of a warrant presented to him for payment, it is his duty to pay it; and, having paid it in the discharge of his duty, he ought not to be held liable to the fund out of which it has been paid. He must, however, act in good faith, and exercise care and prudence to make no payment for which the county or school district should not be held liable. The treasurer was presumed to know the law, --that the assessor was only entitled to a commission

of 1 per cent. of the taxes levied and assessed; but it does not appear that he knew what amount had been levied, or what the assessed value of the property in the district was, and it seems, also, that the warrant paid embraced other items. Whether or not he should be protected in the payment would be a fact to be determined by his care and good faith. He should take care to see that the warrant has been drawn by the proper authority, and in accordance with law. He cannot have credit for a warrant issued for an illegal claim, if he has reason to believe that the demand for which it was issued was in fact illegal. . . . . . . . "

Applying the rules of law laid down in this opinion to the present situation, the county treasurer of Ector County, and the sureties on his bond, are also liable for the salary paid to said appointed county commissioner, unless said county treasurer acted in good faith and had no reason to believe that the payment of said salary was illegal.

Your first question having been answered in the affirmative, an answer to your third question is not called for under the wording of your request, but, if the inducted county commissioner should have to file suit to recover his salary, such suit should be against Ector County and not against the appointed commissioner to whom the salary was paid.

Trusting that this satisfactorily answers your inquiry, we remain

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By s/ Jas. W. Bassett
Jas. W. Bassett
Assistant

JWB:mp:wc

APPROVED MAR 15, 1945
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman