## AMERICAN NAT. INS. CO. v. DONALD et al.
## SAME v. WRIGHT et al.
### Nos. 12979, 12993.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 26, 1934.

Rehearing Denied Dec. 21, 1934.

Wren, Pearson & Jeffrey, of Fort Worth, for appellant.

J. W. Chancellor, M. A. Bryan, and Donald & Donald, all of Bowie, for appellees.

POWER, Justice.

On July 16, 1930, the city of Bowie entered into a contract with the Sanitary Appliance Company, Inc., by the terms of which the company agreed to furnish to the city of Bowie 400 units of a patented device manufactured under the trade-name of Saco Pit toilets, more fully described as follows: "Saco Pit Toilet, consisting of Copper, Steel Slab, width four feet, length five feet, with three-inch sides (No. 12 U. S. Gauge), fitted with copper steel bowl, extra heavy protective coating Asphalt-Gilsonite Enamel, hardwood water closet seat, double reinforced non-split construction, with solid brass nickle-plated bar hinge and cover; ten feet three-inch galvanized vent pipe."

It was agreed in the contract that the consideration for the delivery of the patented device was to be $11,600; and further agreed that, due to the fact that the city did not have on hand funds sufficient for the payment of this indebtedness, the city bound itself to issue to the company interest-bearing revenue bonds, to be dated July 16, 1930, and to secure the payment of these bonds it was agreed that the company retain a lien on the appliances to be delivered to the city, and the city agreed to pledge the revenues therefrom, to-

gether with a sufficient amount of the revenues of its water system to meet the interest and sinking fund requirements of said revenue bonds.

An ordinance of the city of Bowie was duly enacted ratifying the contract and directing the mayor to execute bonds numbered from 1 to 24, inclusive, of the denomination of $500 each, except one for $100, and authorizing the mayor to execute a mortgage or deed of trust making effective the liens on the property to be constructed for such sanitary appliance units and pledging the revenues to be derived from the rental of said units, and further pledging the revenues from its water system, all of which it was agreed would provide a fund to meet the interest and sinking fund requirements of the revenue bonds.

In compliance with this direction, the mayor did execute such bonds and such deed of trust. The deed of trust was, in part, as follows: "The principal and interest of this bond are payable out of a fund created from the revenues of the Water Works and Sanitary System of said city which has been pledged to that purpose, and to further secure the payment of this bond and the series of which it is one, the City of Bowie has executed a mortgage and deed of indenture on the said Water Works and Sanitary Systems and all appurtenances pertaining thereto, acquired or to be acquired, and has pledged and mortgaged the income thereof."

The deed of trust specifically described the property encumbered as follows:

"(1) Four Hundred (400) units of the 'Saco Pit Toilet.'

"(2) The City of Bowie, Texas Water Works system complete, consisting of approximately 4800 feet of eight inch main, approximately 1500 feet of six inch main, approximately 18000 4″ feet of service line, together with all fire hydrants, tees, elbows, connections and appurtenances; elevated tanks, pumping plant is situated, together with all easements and other property and/or equipment belonging, incident or appertaining to the City of Bowie, Texas, Water Works System.

"10000 ft. service lines."

Under the facts proven it is shown that the sanitary appliances sold to the city of Bowie were not connected or intended to be connected in any way with the sewer or waterworks system of the city, but that such of them as were installed were used by citizens in connection with outhouses, disconnected with any water or sewer system of the city.

Plaintiff Paul Donald, a resident citizen of the city of Bowie, filed suit to enjoin the payment of the interest on these bonds. Later, the American National Insurance Company, who had become the owner of these bonds, sought to have issued a writ of mandamus directed to the city officials, requiring said officials to collect the rentals from each and every user of said sanitary appliance and deposit same with the city treasurer and to continue such collections each and every month until the termination of the issues involved in the case of Paul Donald vs. City of Bowie. By agreement the two cases have been consolidated and are so considered by this court.

Judgment was entered by the trial court in behalf of Paul Donald, perpetually enjoining the city of Bowie, its mayor, aldermen, secretary, and treasurer from paying out any sums of money to the American National Insurance Company or the Sanitary Appliance Company, Inc., upon the bonds in question, or paying any interest on such bonds. The judgment further recites that while it appeared to the court that the purchase by the city of Bowie of the 400 Saco Pit toilets from the Sanitary Appliance Company was unauthorized and invalid, yet it further appearing that the said Saco Pit toilets were owned by the said Sanitary Appliance Company, Inc., and after said purported sale to the city of Bowie, the said city of Bowie issued the bonds in favor of the said Sanitary Appliance Company, Inc., and that the Sanitary Appliance Company, Inc., negotiated the same to the American National Insurance Company, and that the said bonds provided a lien against said 400 Saco Pit toilets, the court is of the opinion that defendant American National Insurance Company has a valid and enforceable lien against said 400 Saco Pit toilets, which lien amounts to $11,000, with 5 per cent. interest from June 16, 1930, and it is decreed that said lien on said Saco Pit toilets be foreclosed and that order of sale issue. The judgment further recites that all other relief as prayed for by the American National Insurance Company is denied, and all costs are taxed against the said American National Insurance Company.

The bonds involved in this case were issued in 1930. At that time article 1111, as amended by the 40th Legislature (chapter 194, § 1), read as follows: "All cities and towns operating under this title have power to mortgage and encumber their light systems, water systems, or sewer systems, either, both, or all, and the franchise and income thereof, and everything pertaining thereto, acquired or to be acquired, to secure the payment of funds

to purchase same, or to purchase additional water powers, riparian rights, or to build, improve, enlarge, extend or repair such systems, or either, or all of them."

And article 1112, as amended by Acts 1927, c. 194, § 2, was as follows: "No such light, water, or sewer system shall ever be sold until such sale is authorized by a majority vote of the qualified voters of such city or town; nor shall same be encumbered for more than five thousand dollars, except for purchase money, or for extensions, or to refund any existing indebtedness, until authorized in like manner. Such vote in either case shall be ascertained at an election, of which notice shall be given in like manner as in cases of the issuance of municipal bonds by such cities and towns."

By Act of the 43d Legislature, c. 122, § 1, p. 320 (Vernon's Ann. Civ. St. art. 1111), article 1111, was changed to read as follows: "All cities and towns including Home Rule Cities operating under this title shall have power to build and purchase, to mortgage and encumber their light systems, water systems, sewer systems, or sanitary disposal equipment and appliances, or natural gas systems, parks and/or swimming pools, either, or all, and the franchise and income thereof and everything pertaining thereto acquired or to be acquired and to evidence the obligation therefor by the issuance of bonds, notes or warrants, and to secure the payment of funds to purchase same; or to purchase additional water powers, riparian rights, or to build, improve, enlarge, extend or repair such systems, or any one of them, including the purchase of equipment and appliances for the sanitary disposal of excreta and offal."

And article 1112 was amended (Acts 1933, c. 122, § 2 [Vernon's Ann. Civ. St. art. 1112]) to read as follows: "No such light, water, sewer, or natural gas systems, parks and/or swimming pools, shall ever be sold until such sale is authorized by a majority vote of the qualified voters of such city or town; nor shall same be encumbered for more than Five Thousand ($5,000.00) Dollars, except for purchase money, or to refund any existing indebtedness lawfully created, until authorized in like manner. Such vote in either case shall be ascertained at an election, which election shall be held and notice thereof given as is provided in the case of the issuance of municipal bonds by such cities or towns."

The Acts of the 43d Legislature not only amended articles 1111 and 1112, but section 7 of said act (Vernon's Ann. Civ. St. art. 1114c) provided as follows: "The actions of all cities and towns and of all officials in passing ordinances, adopting resolutions, executing securities and delivering securities to accomplish the objects permitted under this Act are hereby expressly authorized and validated in like manner as if this law had been effective at the time of such actions, subject to the provisions of Section 5."

Appellant contends that the bonds in question were valid under the provisions of articles 1111 and 1112, Acts of the 40th Legislature, and as the law existed in 1930 at the time the bonds were issued. It is agreed that no incumbrance was authorized on the water system by a vote of the qualified voters of the city of Bowie. This being true, it is the opinion of this court that the bonds in question, pledging revenues from the water system, were void. City of Dayton v. Allred, Attorney General (Tex. Com. App.) 68 S. W. (2d) 172; McCann v. Akard (Tex. Com. App.) 68 S.W.(2d) 1033.

Appellant contends further that if said bonds were not valid under articles 1111 and 1112 as they existed in 1930 under Acts of the 40th Legislature, then that they became valid by reason of the amendment to said statutes by the Acts of the 43d Legislature and by reason of the validating provision of said act as found in section 7, quoted above. This court cannot agree to this contention. Article 1111, stripped of all parts not applicable to the facts in this case, would read as follows: "All cities and towns shall have power to purchase and encumber their sanitary disposal equipment and appliances and the franchise and income thereof and everything pertaining thereto, acquired or to be acquired, and to evidence the obligation therefor by the issuance of bonds and to secure the payment of funds to purchase same, including the purchase of equipment and appliances for the sanitary disposal of excreta and offal."

And article 1112, as amended by the 43d Legislature as applying to this case, would read: "No water or sewerage system shall ever be encumbered for more than $5,000.00 except for purchase money or to refund any existing indebtedness lawfully created until such encumbrance is authorized by a majority vote of the qualified voters of such city or town."

It appears to the court that, notwithstanding the validating provisions of section 7 of the Act of the 43d Legislature, article 1112 yet prevents the incumbrance of the water system without a vote of the qualified voters of the city of Bowie. The provisions of section

7, Acts of the 43d Legislature, directs themselves not only to article 1111, but to article 1112 as well. The incumbrance made and provided for in the contracts and ordinances of the city of Bowie not only incumbers the sanitary appliances purchased, but incumbers the water system as well. The income from a water system as pledged is an incumbrance upon the system. City of Dayton v. Allred, cited above.

This court cannot construe the meaning of these statutes, when considered separately and/or collectively, to permit the city of Bowie to purchase sanitary appliances used and intended to be used disconnected from the waterworks system and pledge and incumber the waterworks system to secure the payment of the purchase price of the sanitary appliances, except upon compliance with a vote of the qualified voters. City of Dayton v. Allred (Tex. Com. App.) 68 S.W.(2d) 172; City of Cross Plains v. Radford (Tex. Civ. App.) 73 S.W.(2d) 1093.

The trial court adjudged a foreclosure of the liens against the sanitary appliances sold to the city of Bowie. This is all, in the judgment of this court, that appellants are entitled to. The bonds being void in that they were not approved by the qualifying voters of the city of Bowie, other questions presented are of such a nature as that it is not necessary to discuss the same in this opinion.

The judgment of the trial court as to each case is in all things affirmed.