AMERICAN NATIONAL INSURANCE COMPANY V. PAUL DONALD ET AL AND T. J. WRIGHT ET AL.

No. 6869. Decided June 19, 1935.
Rehearing overruled July 24, 1935.
(83 S. W., 2d Series, 947.)

*Benson & Benson,* of Bowie, *Frank S. Anderson,* of Galveston, and *Wren, Pearson & Jeffrey,* of Fort Worth, for plaintiff in error.

On question of validity of bonds. City of Dayton v. Allred, 123 Texas, 60, 68 S. W. (2d) 172; Burlington Saving Bank v. City of Clinton, 106 Fed., 269.

*J. W. Chancellor, M. A. Bryan,* and *Donald & Donald,* all of Bowie, for defendants in error.

*Fulbright, Crooker & Freeman* and *C. A. Leddy,* of Houston, filed brief as amicus curiae.

MR. JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

In the year 1930, the City of Bowie bought a number of Saco Pit Toilets. Each of the toilets consisted of a toilet seat, and accompanying equipment, designed for use, in connection with a pit dug in the ground, as a sanitary disposal unit. The city owned a water system, but no sewer system. The toilets were not designed for use in connection with the city water system, in any way. According to the terms of the purchase contract, the toilets were purchased by the city for the purpose of renting same, for a stipulated monthly rental, to the individual inhabitants of the city, for installment and use in privies appurtenant to private residences and places of business, in order that such individual inhabitants might meet the requirements of a penal ordinance, prescribing the use of toilets of this type. The city issued to the seller, for the purchase price of the toilets, revenue bonds in the sum of $11,600.00. To secure the payment of the bonds, the city executed a mortgage covering the city water system and the income thereof, and the said toilets and the income derived from the renting of same. The city proceeded to rent the toilets in accordance with the terms of the purchase contract, and the toilets that were rented were installed and used by private citizens for the purpose for which they were designed. Paul Donald and other taxpayers of the city brought suit to enjoin the payment by the city of any of the revenue bonds or interest thereon, on the ground that the bonds and mortgage are unauthorized by law, and are therefore void. About the same time, the American National Insurance Company, who had become the holder of the bonds, brought suit for mandamus to compel the city officials to collect the prescribed rentals for the use of the toilets, and apply the collected funds to the payment of the bonds. In the first mentioned suit, the trial court entered judgment perpetually enjoining the city officials from paying the bonds. The judgment provided, however, for the foreclosure of a lien of some sort on the toilets. In the second suit, judgment was rendered denying the mandamus sought. An appeal was perfected in each case, but in the Court of Civil Appeals the cases

were consolidated and said court, upon hearing the consolidated case, affirmed the judgment of the trial court. 77 S. W. (2d) 1081.

The plaintiff in error contends that the bonds and mortgage were authorized by the provisions of Article 1111 of the Revised Statutes of 1925, as amended in the year 1927, (Acts 40th Leg. Reg. Sess., Chap. 194). In the alternative, it is contended that under the provisions of Article 1111, as amended by the Act of 1933 (Acts 43rd Leg. Reg. Sess., Chap. 122) the bonds and mortgage would be valid if the last mentioned Act had been in effect in 1930 when said toilets were purchased, and therefore the bonds and mortgage were validated by the provisions of Section 7 of said Act of 1933.

Article 1111, as amended in 1927, read as follows:

"All cities and towns operating under this title have power to mortgage and encumber their light systems, water systems, or sewer systems, either, both, or all, and the franchise and income thereof, and everything pertaining thereto, acquired or to be acquired, to secure the payment of funds to purchase same, or to purchase additional water powers, riparian rights, or to build, improve, enlarge, extend or repair such systems, or either, or all of them."

Article 1111, as amended by the Act of 1933, reads, so far as relevant, as follows:

"All cities and towns including Home Rule Cities operating under this title shall have power to build and purchase, to mortgage and encumber their light systems, water systems, sewer systems, or sanitary disposal equipment and appliances, or natural gas systems, parks and/or swimming pools, either, or all, and the franchise and income thereof and everything pertaining thereto acquired or to be acquired and to evidence the obligation therefor by the issuance of bonds, notes or warrants, and to secure the payment of funds to purchase same; or to purchase additional water powers, riparian rights, or to build, improve, enlarge, extend or repair such systems, or any one of them, including the purchase of equipment and appliances for the sanitary disposal of excreta and offal."

Section 7 of said Act of 1933 provides:—

"The actions of all cities and towns and of all officials in passing ordinances, adopting resolutions, executing securities and delivering securities to accomplish the objects permitted under this Act are hereby expressly authorized and validated in like manner as if this law had been effective at the time of such actions, subject to the provisions of Section 5."

Manifestly the toilets in question are not embraced by the terms of Article 1111 in either of its amended forms. As said, the toilets were bought by the city for the purpose of being used by individual residents of the city as a means of keeping their privies in a sanitary condition,—and the toilets are so used. Whatever benefits accrue to the general public, as a result of this use, are incidental. The toilets, as installed and used, do not constitute the city's sewer system, nor do they pertain to any other unit of public utility that is authorized, under terms of Article 1111, to be mortgaged. It is contended, however, that the toilets are embraced by the term "sanitary disposal equipment or appliances," as used in the 1933 amendment of said statute. The term quoted has reference to sanitary disposal equipment or appliances which, collectively, constitute a distinct unit of public utility that is used by the city for the common benefit of the inhabitants of the ciy. This is made plain by the fact that the statute, for the purposes of the statute, puts in the same class with well recognized units of public utility, the "sanitary disposal equipment or appliances" of the city or town.

Article 1111, as amended in 1933, contains still other language that should be noticed. We speak of the langage that seems to indicate the delegation of authority to a city to mortgage its water system, and other public utilities, for "the purchase of equipment and appliances for the disposal of excreta and offal." In relation to the user of the equipment and appliances, the meaning of the quoted language is the same as the similar language just examined. The provision respects equipment and appliances designed for use by the city itself in conducting sanitary operations of the sort indicated.

From what has been said, it is seen that even if Article 1111, as amended in 1933, had been the law in 1930, when the toilets in question were purchased, still the bonds and mortgage would not be valid. The provisions of Section 7 of the Act of 1933 do not therefore apply. The bonds and mortgage are void.

The defendants in error do not complain of the judgment of the trial court in the respect that it is unfavorable to them; and in the respect that it is in their favor the judgment is correct. The said judgment, and that of the Court of Civil Appeals affirming same, are therefore affirmed.

Opinion adopted by Supreme Court June 19, 1935.

Rehearing overruled July 24, 1935.