## PEOPLES NAT. BANK OF TYLER v. CITY OF TYLER.

### No. 5637.

Court of Civil Appeals of Texas. Texarkana.

June 13, 1940.

Rehearing Denied June 20, 1940.

Lasseter, Simpson, Spruiell & Lowry, of Tyler, for appellant.

Troy Smith, of Tyler, for appellee.

WILLIAMS, Justice.

The Peoples National Bank of Tyler sued the City of Tyler, a municipal corporation, to recover on 4 sanitary equipment revenue bonds of $1,000 each, with interest and attorney fees. This was the balance unpaid of an original amount of $9,500 issued in July, 1931, by the city to Sanitary Appliance Company and by the latter sold and delivered to the bank for a valuable consideration. They purport to have been issued under Article 1111, R.C.S., Vernon's Ann.Civ.St. art. 1111, pursuant to a purchase agreement with said company of 400 Saco Pit Toilets. Same is identical with the equipment described in American Nat. Ins. Co. v. Donald, Tex. Civ.App., 77 S.W.2d 1080. The issuance of the bonds grew out of an identical purchase contract, indenture, and city ordinance as detailed in above case. Here a mortgage was retained only against the equipment, and only the contemplated revenue to be derived from the rentals of such equipment was pledged to liquidate the bonds.

The indenture and bonds executed and issued provided for this equipment, styled Saco Pit Toilets, to be rented out by the city for a monthly rental of 75¢ per unit; that out of the revenue so realized, less certain expenses, the city was to pay not less than $225 monthly, and further in event of default the city was to pay $225 per month rental until the bonds were retired. Each of above instruments together with the bonds provided "the holder hereof shall never have the right to demand payment of this obligation out of any funds raised by taxation." The city, as the basis of issuance of the bonds and indenture, enacted an ordinance which in effect required the use of these units, prescribed penalties for failure to pay the rentals, and a fine of $100 per day for each day's violation of any of the various provisions in the ordinance.

The venture did not get off to a flying start. Eventually 250 of such "Saco" seats

and vent pipes were installed in privies. After a brief flash of success in collecting the rentals, the patrons gradually grew dilatory in paying. By September, 1935, practically all the patrons had ceased and refused to pay further, at least to the extent that the cost of collecting exceeded the amount realized. The city about this time conferred with and then offered the bank this property. The bank refused same, stating it was in the banking business and none of its officials wanted to get into the "privy" business; wanted its money, and not the property. The plan of the bank at that time to have the city employ a certain collector did not materialize through no fault of the city. Evidently this proposed collector had studied the requirements of a comfortable seat for a toilet as advised by Chic Sale in his book "The Specialist." He realized that the patrons were so dissatisfied with the equipment, and the construction of the enclosure minus light and library equipment, that they had theretofore refused to pay, even in the face of being fined $100 a day; for he sought a more fruitful field. The city accounted for and paid over to the bank all revenue derived from the rentals. In addition thereto the city had paid prior to September 30, 1934, to the bank on the bond issued $3,672.29 out of its general fund. The city expended further sums in an effort to faithfully comply with this venture. This equipment was in no wise connected with the city's sewer or water system. The purchase was not submitted to bids. No election was had on issuance of the bonds.

In the original petition, filed January 14, 1938, the bank sought recovery on the bonds. Thereafter, on June 2, 1938, the bank made demand in writing for payment of bonds. A provision in the indenture provided for a written demand. A week later the city tendered to the bank, in writing, the property. In the amended petition filed September 21, 1938, the bank sought recovery on the bonds; and in the alternative, to recover for the stipulated rental value of $225 per month from and after January 20, 1936, until such time as the aggregate amount equals the debt alleged to be due. And further, in the alternative, for reasonable value of the use and rental of the equipment from August 7, 1931, to date of trial, less $7,188 theretofore paid by the city. The city answered by general demurrer, denial, and the two and four-year statutes of limitation, and

further pleaded that it did not claim any right, title or interest in the property and had theretofore tendered and there again tendered the property to plaintiff. The city alleged the warrants and contract to be void and that it had paid the bank out of its general fund on the bonds certain sums of money, giving dates and amounts, and sought to recover on a cross-action such sums from the bank, and in the alternative alleged that if the bank was entitled to recover, such money so paid out of its general fund should be set off against any amount the court might find to be due the bank. The cause was tried to the court. The bank was denied a recovery. The city was denied a recovery on its cross-action, and thus the trial court left the parties and the toilets where he found them.

The court concluded under the authority of American Natl. Ins. Co. v. Donald, 125 Tex. 597, 83 S.W.2d 947, that the bonds were issued in violation of the Constitution and void; and being void, the indenture and mortgage given to the bank as trustee to secure them is also void and the terms and provisions thereof are invalid. Appellant does not attack above conclusions of law. The trial court further concluded that if the city was originally legally liable to pay the value for the toilets when bought by it, its liability was barred by limitation; and defendant's cross-action to recover the amount paid out of its general revenue funds to plaintiff was also barred by limitation. No assignment or cross-assignment attacks these two conclusions and they will not be noticed further.

Under the third and fourth conclusions of law the court found "the pit toilets attempted to be bought by the city to be installed on the private premises of citizens, and for the private use of the occupants of such premises are not, and were not, for the general use and benefit of the city, and were not such equipment as the city had any right to purchase (as distinguished from those things which a city might purchase and be liable for the value although there be some defect in the provisions made for payment), and, therefore the city is not liable for any rental value to the owner or seller or its assigns, of the property." It is upon this conclusion of law that appellant directs its attack. And in connection therewith the fourth proposition reads: "Where a city obtains personal property by reason of the execution

of void bonds, and thereafter tenders the property to the vendor, the vendor is entitled to recover the reasonable rental value for the use of the property for the period of time within the two years statute of limitations."

And in support thereof urges the proposition that "A city organized under the general laws and having adopted the powers conferred therein, has power, under the city's general powers, to promote public health, to contract for the purchase of sanitary pit toilets to be owned by the city and to be rented to property owners to facilitate owners' compliance with sanitary ordinances."

■ At the time of trial the opinion by the Commission of Appeals in the Donald case, supra, was the last expression on the subject here involved. That opinion held that municipal revenue bonds issued for the purpose of pit toilets which had no connection with the city's water and sewer system and which the city rented to individual inhabitants, were void, and specifically stated that such pit toilets gave no benefit to the general public save and except that which might be incidental. In Baldwin v. Travis County, 40 Tex.Civ.App. 149, 88 S.W. 480, 481, 484, writ denied, it is stated, "And a county cannot be held liable in an action upon an implied contract or quantum meruit, unless the commissioners' court was authorized to make the contract sought to be implied, or on which the quantum meruit is based." In McQuillin on Municipal Corporations, Vol. 3, Sec. 1274, it is said: "If a contract is ultra vires it is wholly void * * * and (4) there can be no recovery on an implied contract, although it had been executed and the municipality has received the benefit of the contract." In 19 R.C.S. p. 1064, it is stated, "When a contract is entered into in violation of a positive rule of law intended for the protection of the taxpayers such as a requirement * * * that the incurrence of an obligation of a certain magnitude (as here) shall have the approval of the voters * * *, there can be no recovery * * * upon a quantum meruit." Evidently the able and learned trial judge followed above authorities and the provisions in the bond and indenture that the holder should never have the right to demand payment out of any funds raised by taxation. But since the trial, the Austin Court of Civil Appeals in Collins v.

City of Eldorado, 122 S.W.2d 690, in construing the holding in Southwestern Lloyds v. City of Wheeler, 130 Tex. 492, 109 S.W. 2d 739, reached the conclusions that a city operated under the general laws had the implied power to purchase pit toilets. Writ of error was refused in the Eldorado case. This being the latest expression of the Supreme Court, we reluctantly conclude that the bank "has a right to seek recovery on the theory of quantum meruit."

■ The court's findings of fact will not authorize a judgment to be here rendered on the quantum meruit theory, or a denial of recovery on same. The court's finding of fact No. 11 will not support a recovery on such theory. Because as stated in Sluder v. City of San Antonio, Tex.Com. App., 2 S.W.2d 841, 842, 845, " * * * where a * * * municipality receives benefits under a contract, illegal because not made in conformity with the Constitution or statute of the state, or charter provision of the city, it will be held liable on an implied contract for the reasonable value of the benefits which it may have received" and "would be limited to the reasonable value of the benefits received by the city." To the same effect see West Audit Co. v. Yoakum County, Tex.Com. App., 35 S.W.2d 404; City of Texarkana v. Keeney, Tex.Civ.App., 50 S.W.2d 339; City of Mission v. Eureka Fire Hose Mfg. Co., Tex.Civ.App., 67 S.W.2d 455. The evidence presents a serious question as to whether the city received any benefits from this undertaking. The stipulation in the indenture of a rental of $225 is only evidentiary.

■ The date of the first tender and refusal, if in fact made, would be material in calculating the amount the city benefited, if any, from the use of the property, and the application of the statute of limitation urged as a defense to recovery. In the absence of either of such findings, and in view that the cause was disposed of under the first theory above discussed, the cause will be reversed and remanded.

■ We agree with the trial court wherein it is stated that "the court would not have permitted them to be actually tendered in court." Being installed and in use on private premises of individuals as contemplated under the contract, probably perfumed, saturated and stained from usage, the city will not be required to seize

and manually deliver these so-called pit toilets into the lobby of the bank or the court room in order to constitute a legal tender.

The judgment is reversed and cause remanded.