B. V. CHRISTIE et al., Appellants,

v.

HARRIS COUNTY FRESH WATER
SUPPLY DISTRICT NO. 23,
Appellee.

No. 3563.

Court of Civil Appeals of Texas.

Waco.

Oct. 6, 1958.

Rehearing Denied Nov. 6, 1958.

Baker, Botts, Andrews & Shepherd, John H. Jenkins, Peter S. Solito, Houston, for appellants.

Louis W. Graves, Jr., I. J. Saccomanno, Robert A. Jircik, R. H. Burks, Acting City Atty., Homer T. Bouldin, Senior Asst. City Atty., Houston, for appellee.

McDONALD, Chief Justice.

This is a suit instituted by Harris County Fresh Water Supply District No. 23, as plaintiff, for recovery of $9,750 paid to B. V. Christie & Company for services allegedly rendered as fiscal agent of the District, and for $9,750 paid to W. L. Norman as a broker's fee for allegedly selling certain bonds for the District.

Motions by the defendants in the nature of pleas in abatement were made, attacking the plaintiff's capacity to maintain suit as a corporation and contending that the City of Houston was the proper party plaintiff. Such pleas were overruled. Trial was before the Judge without a jury. Judgment was rendered for plaintiff against both defendants.

The record discloses that plaintiff Harris County Fresh Water Supply District No. 23 held its organizational meeting on 28 June 1950; that defendant Christie & Company is an investment bank and bond broker partnership composed of Walter Todd and B. V. Christie, and that Norman was employed by Christie & Company under a contract by which Norman received a percentage of the net profit on any deals which he originated.

Christie and Norman were actually responsible for the organization of the Water District. They had observed that the area involved had become populated, etc., and was in need of water and sewer facilities. They caused circulars to be distributed in the area pointing up the advantages of organizing a water district; met with the people of the area; assisted in the organization of the Water District; furnished a team composed of an attorney, an engineer, and a bondman to advise them on organization and the preparation of petitions, etc. to vote bonds to build the water and sewer system. In fact, the creation of the Water District was, in the words of the witness Todd (partner of Christie Company), *"a promotional scheme in the purest sense of the word."* As noted, the organization of the District was completed on *28 June 1950,* and on this date Christie, acting through Norman, signed a "Fiscal Agency" contract with the Water District. Such contract recognized the efforts of Christie & Company in connection with the organization of the District, and employed Christie as fiscal agent and financial advisor. Financial advice, of course, included advising the District as to the lowest interest rate that the bonds could bear and still be sold. The contract provided that as compensation Christie would receive 1% of the sale price of the bonds; that Christie should have an option to purchase the bonds at a price of par and accrued interest at a rate not to exceed 4%; that if the District and Christie could not agree on exact interest rates the District could offer the bonds to other purchasers, Christie still having the right to bid on the bonds, and in such event its services would be paid for by 1½% of the principal amount of the bonds sold.

$650,000 bonds were issued by the District on *20 June 1951,* but were not sold. Norman severed his employment with Christie Company about 1 January 1951, but still retained his interest in the Water District No. 23 promotion, by which he would receive a percentage of the profit or fee, when the bonds were sold.

On *11 September 1951,* the bonds still remaining unsold, Norman procured the

execution of a contract with the Supervisors of the Water District whereby he is to receive a commission of 1½% of the sale price of the bonds to sell same.

The bonds were thereafter sold to Ketcham & Nongard, a bond dealer in Chicago. Such bonds bore an overall interest rate of 4.341%. The bonds were delivered to Christie on 4 October 1951 for transmittal on the order of Ketcham & Nongard. On 2 October 1951 Christie became a 50% partner (by written instrument) with Ketcham & Nongard in the purchase of the bonds. Christie thereafter actually made a profit on the sale of the bonds received by it in the transaction. On 4 October the Water District, by check, paid $9,750 to Christie (1½% of the $650,000 bond issue sale price); and by check paid $9,750 to Norman (1½% of the $650,000 bond issue sale price). Thereafter Christie gave Norman in excess of $4,000 of the amount it received.

Thereafter dissatisfaction arose in the Water District over the manner in which its affairs had been conducted, and new Supervisors were elected at an election for same. These new Supervisors, on *3 October 1953*, instituted the instant case against Christie and Norman to recover the $9,750 paid to each, alleging that the contracts by which such payments were made were void and a nullity. Plaintiff Water District in its suit alleged that the so-called contracts for the compensation to Christie and Norman constituted a part of a scheme and device to violate Article 7939, R.C.S., Vernon's Ann.Civ.St. art. 7939, which was specially pleaded and which in substance provides· *that bonds shall not be sold for less than par value and accrued interest;* that Christie was a purchaser of a portion of the bonds and the effect of the 1½% payments was to give Christie the bonds at less than par, in violation of the foregoing statute. The plaintiff's petition further alleges that neither of the defendants actually performed any services, and sought recovery of the $9,750 paid each, against both Christie and Norman.

After the filing of the foregoing cause in 1953, the City of Houston on *11 February 1957* by ordinance annexed the Water District into the City of Houston. Thereafter a suit was filed contesting the legality of the annexation of the Water District to the city. Such case ultimately went to the United States Supreme Court, Forbes v. City of Houston, 357 U.S. 905, 78 S.Ct. 1151, 2 L.Ed.2d 1156 and was only finally adjudicated, confirming the legality of the annexation of the Water District to the city, in July 1958. In *June 1957,* when the case at bar was called for trial (and was tried) the case contesting the annexation was pending in the courts. In such a state of events defendants filed the pleas in abatement heretofore noted, asking that the City of Houston be substituted as party plaintiff. Such pleas were overruled and the cause was tried on its merits before the court without a jury, which, after hearing, rendered judgment in favor of the plaintiff Water District for $9,750 against Christie and $9,750 against Norman. The Court further awarded plaintiff interest at the rate of 6% on such amounts from *4 October 1951* (the date that such amounts had been paid to defendants).

Upon request the Trial Court filed Findings of Fact and Conclusions of Law, pertinent portions of which are (partially) summarized hereafter:

### Findings of Fact

1. Harris County Fresh Water Supply District No. 23, plaintiff herein, was organized under Articles 7881–7959(a) inclusive, R.C.S., Vernon's Ann.Civ.St. arts. 7881–7959(a).

2. Walter Todd and B. V. Christie are partners, doing business as B. V. Christie & Company.

3. W. L. Norman was associated with Christie & Company under a contract by which he was to receive a percentage of the net profit on any deals originated by him.

4. On *28 June 1950* Water District 23 entered into a contract with Christie, which recognized the work Christie had done in connection with the District and employed the company as its fiscal agent and financial adviser. As compensation the District agreed to pay Christie 1% of the principal amount of bonds authorized and sold by the District; and further gave Christie an option to purchase the bonds at par at a rate of interest not to exceed 4%; and further provided if Christie and the District could not agree on the exact rate of interest not to exceed 4%, the District could offer the bonds elsewhere, with Christie still to have a right to bid thereon, and in such eventuality the District would pay Christie 1½% of the principal amount of the bonds sold.

5. The Water District held its organizational meeting on *28 June 1950*.

6. Norman, on behalf of Christie, secured the execution of the *28 June 1950* contract with the District, and under the terms of his contract with Christie, became entitled to 50% of the net profit realized from such contract.

7. Christie performed substantial services in furthering the organization of the District, but on *28 June 1950* it had already performed the major portion of the services which were rendered to the District by it.

8. On 31 July 1950 an election was held by the District, at which $650,000 in bonds was authorized.

9. On 4 August 1950 Christie offered to buy the bonds at an interest rate of 4%; however, this transaction was never consummated due to an election contest, among other reasons.

10. On 7 June 1951 Christie offered to buy the bonds at a 4.219% interest rate, which offer was not accepted by the District.

11. On 20 June 1951 the $650,000 in bonds were issued and on 5 July 1951 and on 7 September 1951 the District amended the terms of such issuance.

12. Defendant Norman claims to have entered into a contract with the District on 11 September 1951, by the terms of which he would be paid a 1½% commission (of the face value of the bonds) for effecting a sale of same. It is found that this contract was not duly authorized by the District and was therefore never validly entered into.

13. On 11 September 1951, Norman had a 50% interest in any profit which might be realized by Christie under its contract of 28 June 1950 with the District; however, such interest was not disclosed to the District by Norman.

14. On 18 September 1950 Christie (through Norman) offered to purchase the $650,000 bonds from the District, stating it was on behalf of its client Ketcham & Nongard of Chicago. Such offer was accepted by the District and provided the bonds should bear interest at the rate of 4.341%.

15. In this purchase Christie did not purport to act as agent of the District, and as to such purchase did not stand in a confidential or fiduciary relationship to the District.

16. Prior to 18 September 1951 Christie had been in negotiation with Ketcham & Nongard concerning participation in the bond transaction, and consummated such by an agreement dated 2 October 1951 (which gave Christie a 50% participation). On 11 September 1951 and on 18 September 1951, when Norman submitted the offer (to the District) he was aware that Christie was considering a participation in the transaction.

17. The sale was closed on 4 October 1951, at which time the District was paid $661,801 (par and interest). At this time the District was on notice that Christie was acting for the purchaser.

18. Out of the proceeds of the sale on 4 October 1951 the District paid Christie $9750 (1½% of the principal of the bonds

sold) pursuant to the contract of 28 June 1951, and thereafter Christie paid out of such amount a sum in excess of $4,000 but less than $5,000, which represented Norman's share of the profit under the contract.

19. Out of the proceeds of the sale on 4 October 1951 the District paid Norman $9750 (1½% of the principal of the bonds sold) pursuant to his alleged contract of 11 September 1951. Christie had no knowledge of the Norman contract or of the payment thereunder.

20. Subsequent to 4 October 1951, pursuant to the participation agreement with Ketcham & Nongard, Christie sold some 172 of the bonds for an overall profit.

21. This suit was instituted on 30 October 1953 and thereafter, on 31 December 1956, the District was annexed to the City of Houston and the Water District was abolished by Ordinance No. 57–144 of the City of Houston, effective 11 February 1957. The only authority directly from the City of Houston for operation by the District subsequent to 11 February 1957 was in Ordinance No. 57–143, 6 February 1957 (which empowered the employees of the District to do every act it was their duty or authority to do).

22. Upon the date of trial the Board of Supervisors of the District was and had been continuing the operation of the District, but all checks were being countersigned by the Controller of the City of Houston.

23. It is found that the effect of the contract of 28 June 1950, entered into between Christie and the District, was to give Christie a discount on the purchase of the bonds if it became the purchaser thereof.

## Conclusions of Law

1. Water District No. 23 did have power subsequent to 31 December 1956, as well as 11 February 1957, to operate the District and to maintain this action.

2. On 11 September 1951 Norman could not legally act as agent to sell the bonds of the Water District because on such date Norman had an interest in a payment to be received by him from Christie under Christie's contract with the District dated 28 June 1950.

3. The alleged contract of 11 September 1951 between the District and Norman was not binding on the District because it was not authorized by the District in accordance with statutory requirements.

4. The payment of $9,750 by the District to Norman was illegal because Norman was not the procuring cause of the sale of the District's bonds.

5. The District is entitled to recover from Norman $9,750, with interest thereon from 4 October 1951.

6. The payment by the District to Christie of $9,750 on 4 October 1950 was illegal because such payment constituted a violation of the terms of Article 7939, R.C.S., which statute requires that the District's bonds be sold at not less than their face value and accrued interest.

7. The District is entitled to recover from Christie & Company, Walter Todd, and B. V. Christie $9,750, with interest thereon at the rate of 6% from 4 October 1951.

8. One-half of the costs should be taxed against Norman, and one-half against Christie.

As heretofore noted, the Trial Court rendered judgment against both defendants for $9,750, with interest thereon from 4 October 1951.

Both defendants appeal. Both defendants contend: 1) The Trial Court erred in not sustaining their pleas in abatement to the effect that the Water District had ceased to exist and that the City of Houston only had power to maintain the suit as party plaintiff after 11 February 1951. 2) (Defendant Christie contends) that the

Trial Court erred in finding as a fact (No. 23) that the effect of the 28 June 1950 contract between Christie and the District was to give Christie a discount on the bonds if it became the purchaser thereof; and in concluding (No. 6) that the payment by the District to Christie of the $9,750 on 4 October 1951 constituted a violation of Article 7939, R.C.S., requiring the bonds to be sold at not less than their face value and accrued interest. 3) (Defendant Norman contends) that the Trial Court erred in Findings of Fact 12, 13 and 14 and in Conclusions of Law 2, 3 and 4. 4) (Both defendants contend) the Trial Court erred in holding that plaintiff was entitled to interest from 4 October 1951, rather than from the date of demand for the return of the money, or alternatively from the date of judgment.

We revert to defendants' 1st contention, that the Trial Court erred in not sustaining defendants' pleas in abatement that the City of Houston and not Water District No. 23 was the proper party plaintiff.

The City of Houston annexed the Water District on 11 February 1957. This cause was tried in June of 1957. This suit was commenced by the Water District long prior to annexation by the city. The city, after annexation, specifically authorized the District by Ordinance No. 57–143, February 11, 1957, the continuation of employment of "attorneys heretofore employed to prosecute or defend any litigation affecting the District, or to whom any legal matter has been referred for handling for the District * * * (Such attorney) is hereby authorized to continue his employment * * · *." The fact here is that the instant suit was commenced some three years prior to the annexation of the District by the city. The city, by the ordinance, portions of which are set out supra, specifically authorized the attorneys to continue the litigation. Immediately after the annexation of the Water District by the city, serious litigation was instituted attacking the validity of the an-

nexation of the Water District by the city. This litigation was pending at the time this case was called for trial and at the time defendants urged their pleas in abatement, attacking the capacity of the Water District to maintain the suit. See Forbes v. City of Houston, Tex.Civ.App., 304 S.W. 2d 542. The city or the Water District had no way of knowing just how the litigation over the validity of the annexation might terminate. The city "took over" after the annexation, but passed the ordinance above referred to, so that all operations of the Water District might be carried on with the least possible change or disruption whichever way the law suit might go. The Trial Court overruled the defendants' pleas in abatement, thereby permitting the Water District to continue the instant case. On 9 June 1958, long after judgment in the Trial Court in the instant case was rendered, and while the case was pending in this court, the United States Supreme Court denied Writ of Certiorari in the case attacking the validity of the Water District's annexation by the city. Some two weeks later such action became final by reason of the failure of the petitioner to make motion for rehearing. On 15 July 1958 the City of Houston filed motion in this court requesting that it be substituted as party plaintiff in the stead of Water District No. 23 in this suit. Such motion sets forth the foregoing facts, together with a copy of an ordinance of the City of Houston dated 9 July 1958, which ordinance takes note of the termination of the litigation to determine the validity of the annexation, and directs the city's employees and servants to take over the operation of the Water District. It seems to us that since all parties agree that the city is the proper and actual party plaintiff in this cause; that to substitute the city as party plaintiff in lieu of Water District No. 23 changes the cause of action not one iota; that to substitute the city does what the defendants have contended should be done; that it conclusively appears that the city has succeeded to all of the rights and interest of the Water Dis-

trict; that this court has the power within its discretion to order the substitution of the city as party plaintiff, that the city's motion should be and is hereby granted and the City of Houston is hereby substituted as party plaintiff in the instant cause. As to defendants' complaints that the Trial Court erred in failing to sustain their pleas in abatement, such are overruled. Such points are moot in view of the foregoing; and, in any event, no harm is shown to have resulted to defendants by reason of the Trial Court's failure to sustain such pleas in abatement, if indeed it should have done so; and under the particular facts of this case—i. e., the annexation was under attack in the courts, etc.—we think the city ordinance supra was authority for the Water District to continue its suit which has been pending for some three years.

■ Further to the foregoing, the Water District legally instituted the case at bar, and under all the facts and circumstances herein, even though it may have ceased to exist as a corporation de jure (if it did), it still existed in any event as a de facto corporation. See Payne v. First Nat. Bank, Tex.Com.App., 291 S.W. 209. It follows that defendants' points 1 and 2 are overruled.

■ We next consider contention No. 2 made by the defendant Christie, that the Trial Court erred in finding as a fact (No. 23) that the effect of the *28 June 1950* contract between Christie and the District was to give Christie a discount on the bonds if it became the purchaser thereof; and in concluding (No. 6) that the payment of the $9,750 to Christie on 4 October 1951 constituted a violation of Article 7939, R.C.S., which requires that bonds be sold at not less than their face value and accrued interest.

This case was tried by the Court without a jury. We have carefully reviewed the some 500 pages of testimony and some 300 pages of Exhibits in this record, and con-

clude that the finding and conclusion complained of have ample support in the pleadings and in the evidence. In a consideration of this point we note that we must consider all of the Findings of Fact and Conclusions of Law as a whole. Further, we note that defendant Christie states that it is in accord with Findings of Fact 1 through 20 and that complaint only is made of Finding of Fact 23 and Conclusion of Law 6. Finding of Fact 23 is that the effect of the contract of 28 June 1950 between Christie and the Water District was to give Christie a discount on the purchase of the bonds *if* it became the purchaser thereof. Conclusion of Law 6 is that the payment of the $9,750 by the District to Christie was illegal as violative of Article 7939, R.C.S., which provides the bonds cannot be sold at less than their face value.

Both plaintiff and defendant Christie recognize the categories into which cases of this general character fall, viz.:

1) Cover up or bogus commissions or expenses paid to a purchaser, the effect of which amounts to a discount, is *not* permitted by the Texas cases.

2) Payments of reasonable fees or expenses out of the sale of the bonds *is* permitted by the Texas cases.

3) Contracts for the payment for services rendered, which permit the contracting party to bid on the bonds, which in the cases cited, the contracting parties were contractors bidding on the contemplated improvements, *is* permitted.

4) *Broker's commission*, when paid to the purchaser, in effect is a discount, and is *not* permitted by the Texas cases.

Analyzing the Statement of Facts, the contract of the parties, and the Trial Court's Findings of Fact and Conclusions of Law, we conclude: Christie was to render services in connection with the organization of the Water District, and in con-

nection with the issuance and sale of the bonds, and receive therefor 1½%. Christie performed substantial services in furthering the organization of the District, but as of *28 June 1950*, the date of the organization of the District and the date on which its contract with Christie was entered into, Christie had already performed the major portion of the services which were rendered to the District by it. Christie made a secret agreement with Ketcham & Nongard, unknown to plaintiff, whereby it obligated itself to participate in the purchase of the $650,000 bond issue to the extent of one-half. Christie actually purchased some 172 of the bonds (each of $1,000 denomination) or $172,000 worth of the bonds and sold them for a profit. The record before us makes it clear that the entire sequence of events in the organization of the Water District and the sale of the bonds was a promotional scheme originated by Norman and Christie, and that the 1½% compensation provided for Christie in the contract was for selling the bonds as well as for the *dubious organizational duties* performed. Even though Christie did not purport to act as agent for the District in the sale of the bonds, under the record before us it was under a duty to assist in disposing of them, and in fact did so. Since Christie had a secret agreement to purchase 50% of the bonds and since it did in fact purchase some $172,000 of same, the $9,750 paid to Christie in fact had the effect of a discount on the purchase of the $172,000 in bonds which were purchased at par plus accrued interest.

Article 7939 provides * * * "The supervisors shall sell (the bonds) on the best terms and for the best price possible, *not less than their face value and accrued interest* * * *".

11 Tex.Jur. 653 states: "It is provided that bonds shall never be sold at less than their par value and accumulated interest, exclusive of commissions. This provision is mandatory; it may not be evaded by a subterfuge—as, for example, where the bonds are nominal-ly sold at par, but the purchaser is given a separate contract at a rate high enough to enable him to recoup his loss by reason of the fact that the market value of the bonds is less than the par value and accrued interest on the same."

43 Am.Jur. 382, Public Securities and Obligations, states: "As in the case of *other* restrictions designed to limit the contracting of indebtedness by municipal corporations and other political bodies, numerous schemes have been devised to get around the statutory provision against a sale of public bonds for less than par. Finding themselves unable to sell bonds at par, officers in charge of bond issues frequently seek to accomplish indirectly what they are prohibited from doing directly. Needless to say, the courts have been prompt to declare invalid all such indirections. As in other cases where it is sought to do indirectly what cannot be done directly, it is the policy of the law to look beyond the face of the transaction and to hold unlawful any agreement having the effect of avoiding the statutory prohibition."

See also Deming v. Board of Sup'rs of Worth County, 237 Iowa 11, 21 N. W.2d 19, 162 A.L.R. 391 et seq.; 91 A. L.R. 7 et seq., and authorities therein collated.

In the case at bar we have Christie admitting that the whole matter of organizing the Water District was a promotional scheme in the purest sense of the word. Norman and Christie had circulars distributed in the area; selected a key man; called the meetings; financed the whole undertaking; furnished a team of an engineer, a lawyer, and a bondman; agreed to give the best advice possible on interest rates and other matters pertaining to the bonds; then entered into a secret participation in the purchase of the bonds and did in fact purchase a substantial number and amount thereof. We think this case falls squarely

under category No. 1, as well as category No. 4, supra. We think the evidence is ample to support the Trial Court's Finding No. 23 and Conclusion No. 6. Moreover, from this record as a whole we cannot say that the Trial Court erred in this behalf. We accordingly overrule defendant Christie's contention (numbered 2).

 Contention 3 is urged by the defendant Norman, and is that the Trial Court erred in Findings of Fact 12, 13 and 14; and in Conclusions of Law 2, 3 and 4. Suffice it to say that the record before us amply supports the Trial Court's Findings and Conclusions supra. Further to the foregoing, and with reference to Conclusion No. 4 which holds that the payment to Norman was illegal because Norman was not the procuring cause of the sale of the District's bonds, the record abundantly supports the foregoing and this alone is sufficient to sustain the Trial Court's judgment as to the defendant Norman.

Contention 4), made by both defendants, complains of the Trial Court's adjudication of interest against both defendants, from the date of the payments to them, viz.: 4 October 1951, rather than from the date of judgment, and alternatively from the date upon which demand was made for the return of the money.

Plaintiff Water District in its pleadings alleged:

"The plaintiff alleges that by reason of the premises it has been damaged in the sum of $19,500 * * * Premises considered, the plaintiff prays that upon final trial it have its judgment against the defendants, and each of them, for its damages aforesaid."

*At no place in its pleadings does the plaintiff specifically pray for interest, nor is there even a general prayer for relief in the plaintiff's petition.* Presumably the plaintiff knows the extent to which he has been damaged, or in any event, knows what damages he wishes to recover. When there

is neither a prayer for interest, nor a prayer for general relief and a claim for damages in such sum as to include interest in addition to the specific damages claimed, interest may not be allowed. See 13 Tex. Jur.Sec. 264; Davis v. Texas Boiler & Machinery Co., Tex.Civ.App., 242 S.W.2d 647, no writ history; 42 Tex.Jur. p. 555. From the foregoing it is our view that the Trial Court erred in awarding interest from the date of the payments to defendants. Contention 4) is sustained.

Judgment of the Trial Court is reformed to the extent that the principal sum shall bear interest at the rate of 6% from date of judgment, to-wit, *28 June 1957*. In all other respects, judgment of the Trial Court is affirmed. Costs of appeal are adjudged against plaintiff.

Reformed and affirmed.

HALE, J., not participating.