

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

May 20, 1970

Honorable Howard B. Boswell          Opinion No. M-634
Executive Director
Texas Water Development Board
Austin, Texas                        Re:   Authority of Texas Water De-
                                           velopment Board to make a
                                           commitment to political sub-
                                           divisions to purchase their
                                           bonds in the future, subject
                                           to later availability of monies
                                           in the Texas Water Develop-
                                           ment Fund, and related ques-
Dear Mr. Boswell:                          tions.

In your recent request for an official opinion of this department
you state that, under the present state of the money market, and due to
the constitutional limit upon the interest which the Texas Water Develop-
ment Board may pay on its bonds, the Board is unable to market its bonds,
and therefore, the Board is without funds to provide financial assistance
or aid to, or purchase bonds of, the various political subdivisions, as
authorized by Section 15 of Article 8280-9, Vernon's Civil Statutes. You
state:

"Pursuant to Article III, Section 49-c of the
Texas Constitution and Article 8280-9, Vernon's Re-
vised Civil Statutes (Acts 1957, 55th Legislature,
Chapter 425, as amended), the Texas Water Develop-
ment Board has the authority to sell Texas Water De-
velopment Bonds and to use the proceeds to make loans
to political subdivisions, by purchasing their bonds or
other securities, for the construction of water conser-
vation and development projects.

"The present state of the municipal bond market
is such that Texas Water Development Bonds cannot be
currently sold within the 4% interest rate limitation pre-

-3034-

scribed by the Texas Constitution.  As a result, there is
not enough money in the Texas Water Development Fund
to meet all of the loan assistance commitments that have
been made by the Board, and the Board is now confronted
with the necessity of advising certain applicants that com-
mitments made by it to render financial assistance through
the Board's purchase of the applicants' bonds cannot be
currently fulfilled.  Furthermore, the Board is faced with
the prospect of receiving more applications from other
political subdivisions which, because of the uncertain state
of the municipal bond market, are wholly unable to finance
badly needed water projects without state assistance.

"The Board will not be in position to obtain loan-
able funds by the sale of Texas Water Development Bonds
unless and until

a.      the market for state and municipal bonds im-
        proves to the point that such  bonds are salable
        at a rate of interest not exceeding 4%, or

b.      the Constitution can be amended to lift the 4%
        ceiling on the rate of interest which Texas Water
        Development Bonds may bear.

"Certain political subdivisions are in a position to
make temporary financial arrangements for the sale of
their bonds bearing interest rates of 8-8 1/2% provided
that the Texas Water Development Board makes a com-
mitment to such political subdivisions to purchase their
bonds in the future when loanable funds become available
to the Board.  It is contemplated that at the time the Board
fulfills its commitment a refunding of the political sub-
division's bonds issued as temporary financing would be
necessary to adjust the interest rate to the Board's statu-
tory lending rate as prescribed by Section 15, Article
8280-9, V. R. C. S. "

In connection with the facts above stated, we think it is significant
that a proposed amendment, i. e. , Section 49-d-1 of Article III of the Con-

stitution of Texas, was rejected by the voters on August 5, 1969. This amendment would have eliminated the 4% per annum interest rate ceiling in Section 49-c of Article III. See Acts 61st Leg., H.J.R., page 3233 and table showing unfavorable vote on page 3257.

You ask:

"1. Can the Texas Water Development Board make a commitment to political subdivisions to purchase their bonds in the future, subject to the later availability of monies in the Texas Water Development Fund?

"2. If the answer to question no. 1 is affirmative, can the Texas Water Development Board purchase the refunding bonds of a political subdivision from either the political subdivision or the party(ies) with whom the temporary financial arrangements, outlined above, have been made?"

We have concluded that the authority to commit its funds for future disbursement in the manner outlined in your letter is not given the Board by the Constitution (Section 49-c of Article III of the Constitution of Texas) nor by the statute above mentioned, and, therefore, your first question must be answered in the negative.

State Boards and Agencies can exercise only such authority as is conferred upon them by the law of the State of Texas or necessarily implied from a specific grant of authority. Ft. Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S.W.2d 660 (1935); Tri-City Fresh Water Supply Dist. No. 2 v. Mann, 135 Tex. 280, 142 S.W.2d 945 (1940). This rule of strict construction is applied with special emphasis to statutes giving governmental units the authority to incur long term public obligations by issuing bonds or negotiable paper to pay for public improvements. Foster v. City of Waco, 113 Tex. 352, 255 S.W. 1104 (1923); Keel v. Pulte, 10 S.W.2d 694, 697 (Com. App. 1928); American Nat. Ins. Co. v. Donald, 125 Tex. 597, 83 S.W.2d 947 (1935); Citizens Bank v. City of Terrell, 78 Tex. 450, 14 S.W. 1003 (1890).

Section 49-c of Article III of the Texas Constitution creates the Texas Water Development Board and authorizes it to issue bonds bearing no more

than 4% interest and to use the funds received from the sale of such bonds "only for the purpose of aiding or making funds available . . . to the various political subdivisions or bodies politic of the State of Texas . . . in the conservation and development of the water resources of this state . . . by the acquisition, improvement, extension or construction of dams, reservoirs and other water storage projects . . ." (Emphasis added.)

Section 15 of Article 8280-9, Vernon's Civil Statutes (enacted in 1957), provides in part:

"After the Board has examined an application of a political subdivision for financial assistance from the Fund and determined by resolution that the same should be approved, the Board may give financial assistance to the political subdivision by the purchase with monies out of the Texas Water Development Fund of bonds or other securities issued by the political subdivision for the purpose of providing funds to finance a project . . ." (Emphasis added.)

This language clearly shows that the Legislature contemplated that the Board would purchase the direct obligations of a political subdivision seeking financing for a specific project. Neither the constitutional amendment quoted above (Article III, Section 49-c) nor the statute enacted in conformity therewith (Article 8280-9) contain any provision which would authorize the Board to enter into an executory contract to commit itself to purchase bonds from a third party or to purchase the political subdivision's refunding bonds. In our opinion, such a contract would constitute the creation of a debt in manner other than that authorized by Section 49-c of Article III, as shown above. Furthermore, it would constitute an effort to avoid the constitutional limitation upon interest rates.

As we pointed out above, on August 5, 1969, the voters refused to adopt the proposed amendment to the Constitution eliminating the 4% ceiling on interest. Soon thereafter, in September, 1969, the Legislature enacted Article 8280-9c, Vernon's Civil Statutes. Section 2(a) of said Article provides:

"In an order to accomplish the purposes for which water improvement bonds were approved at an election

or otherwise authorized, a subdivision may sell its water
improvement bonds, use the proceeds from the sale for
the purchase of state bonds at not less than par and ac-
crued interest to date of delivery, and sell the state bonds,
even at a discount, to the highest bidder. In such sale of
state bonds at a discount, the net effective interest rate
shall not exceed the maximum net effective interest rate
at which such subdivision can legally sell its own bonds. "
(Emphasis added. )

In our opinion this provision clearly departs from the authorization
contained in Section 49-c of Article III of the Constitution and must be held
to be unconstitutional and therefore ineffective to support the action of the
Board in making the commitment of its funds in the manner outlined in your
letter. In the absence of Section 49-c the issuance of the bonds by the Board
would be an attempt to create a debt within the meaning of Section 49 of said
Article, and, except for the provisions of Section 49-c, no statute could
authorize such action. This office has previously held that unless a contract
is payable out of current revenues, rather than future revenues, it is in-
valid under Section 49 of Article III. Attorney General's Opinions C-134
(1963) and C-385(1965). In other words, Section 49-c of Article III was
adopted for the purpose of authorizing the bonds in question and, unless
Board procedures comply with the provisions of said Section they would con-
stitute the creation of a debt not authorized by the terms of Section 49 of Ar-
ticle III.

In implementing the 1957 constitutional amendment (Section 49-c)
quoted above the Legislature could not vary or enlarge upon the authority
of the Board to issue bonds and use the funds from the sale of such bonds,
because such a variance or enlargement would render the statute invalid
and the bonds void. 81 C.J.S. 1239 States, Section 179. Section 15 of Ar-
ticle 8280-9 quoted above conforms to the provisions of Section 49-c of Ar-
ticle III of the Constitution, but the 1969 statute (Article 8280-9c) does not
conform to the constitutional provision. The latter statute attempts to
authorize political subdivisions to purchase Water Development Board bonds
and sell them at a discount. The procedures there authorized do not come
within the terms of Section 49-c of Article III and must fall as an attempt to
create a debt, in violation of Section 49 of Article III of the Constitution.

In our opinion the 1969 statute attempts to circumvent the intent and spirit of the Constitution by doing indirectly that which cannot be accomplished directly. In Christie v. Harris County Fresh Water Supply District, 317 S. W. 2d 219, 226 (Tex. Civ. App. 1958, error ref. n. r. e.) the Court said:

"43 Am. Jur. 382, Public Securities and Obligations, states: 'As in the case of other restrictions designed to limit the contracting of indebtedness by municipal corporations and other political bodies, numerous schemes have been devised to get around the statutory provision against a sale of public bonds for less than par. Finding themselves unable to sell bonds at par, officers in charge of bond issues frequently seek to accomplish indirectly what they are prohibited from doing directly. Needless to say, the courts have been prompt to declare invalid all such indirections. As in other cases where it is sought to do indirectly what cannot be done directly, it is the policy of the law to look beyond the face of the transaction and to hold unlawful any agreement having the effect of avoiding the statutory prohibition. '

"See also Deming v. Board of Sup'rs of Worth County, 237 Iowa 11, 21 N. W. 2d 19, 162 A. L. R. 391 et seq. ; 91 A. L. R. 7 et seq. , and authorities therein collated. "

In view of the foregoing it is our opinion that the 1969 statute, Article 8280-9c, is unconstitutional and cannot support the proposed action of the Board, and that the provisions of Section 49-c of Article III of the Constitution and of the 1957 statute, Article 8280-9, do not authorize, either expressly or by necessary implication, the action of the Board in committing its future revenues in the manner indicated by your letter. Therefore, your first question must be answered in the negative.

In view of our answer to your question No. 1, it is unnecessary to answer question No. 2, and, although some of the foregoing may bear upon question No. 2, it is not intended directly as an answer thereto.

## SUMMARY

The Texas Water Development Board cannot make a commitment to a political subdivision to purchase their bonds in the future, subject to the later availability of monies in the Texas Water Development Fund. Section 2(a) of Article 8280-9c, V.C.S., is unconstitutional.

Respectfully submitted,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Ralph R. Rash
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Acting Co-Chairman

Joseph H. Sharpley
Harold Kennedy
John Reeves
Jay Floyd
Earl Hines
Roger Tyler

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant